Mayor & Aldermen of City of Vicksburg *v*. Mary Holmes.

[63 South. 454.]

1. Negligence. *Defective buildings. Liability of contractor. Actions.*
The general rule is that after a contractor has turned over the work and it has been accepted by the proprietor, the contractor incurs no further liability to third parties by reason of the condition of the work; but the responsibility, if any, for maintaining or using it in a defective condition, is shifted to the proprietor.

2. Negligence. *Actions. Complaint.*
A bill in chancery which alleges that a city in changing the grade of a street, undertook to raise a church building, and employed a contractor to do the work, that on account of the insufficient number and size of the pillars put under the church and the poor workmanship it was not safe, the pillars being set on the surface of the ground, so that they were likely to be weakened by surface water, and that after the building was turned over to the owners, the floor gave way at a funeral, precipitating plaintiffs to the ground beneath and injuring them, must be construed to mean that the negligent construction and floor material was obvious and that the owner accepted the work without objection, knowing the defect; and that there was no element of deceit or concealment by the city or its agent, and in such case a demurrer should be sustained to the bill.

Appeal from the chancery court of Warren county. Hon. E. N. Thomas, Chancellor.

Bill by Mary Holmes and others against the mayor and board of aldermen of the city of Vicksburg. From a

judgment overruling a demurrer to the complaint, defendant appeals.

The facts are fully stated in the opinion of the court.

*Anderson, Vollor & Kelly,* for appellant.

It will be observed that the contract to raise said building was let and awarded by the city to W. H. Padgett, an independent contractor, and presumably a reputable and competent one, who himself did the work, and not the city.

It will further be observed that on the completion of the building, it was immediately turned over to and received and accepted by the church, who are the owners thereof, and that it so continued in their possession and use up to and at the time of the collapsing thereof and the injury to complainants, and that the city had had no control of any kind over the possession or use of said building from the time that Padgett, the contractor, completed his work and turned the same over to the owners.

Assuming, merely and solely for the sake of this argument, that the city of Vicksburg, appellant, is liable equally with and to the same extent as the independent contractor, a thing which we of course deny, the legal proposition involved in this case from the strongest viewpoint of appellees is: Is the contractor who constructs a house or a church which he knows, or ought to know, is done carelessly, negligent and in an unworkmanlike manner, and is, therefore, likely to be dangerous to the life and limbs of any one who may use it for the purpose for which it was constructed, liable to a stranger to the contract for an injury which he sustains from the collapsing of said building caused by said defects, while he is lawfully using the same?

"The argument of this question has traversed the whole field in which the liability of contractors, manufacturers and vendors to strangers to their contract for

negligence in the construction or sale of the articles has been contested." While the decisions have not been entirely harmonious, still the underlying principle of the law of negligence, that it is the duty of every one to so act himself, and to so use his property as to do no unnecessary damage to his neighbors, may be applied in such a way as to arrive at correct results.

In this case it is a little uncertain as to whether complainants are declaring on contract or on tort. The distinction between the two, while sometimes hazy and enters the twilight zone, still is marked and definite. "Actions for negligence are for breaches of duty. Actions for contract are for breaches of agreement. Hence the limits of liability on negligence are not the limits of liability for contracts, and actions for negligence often accrue where actions upon contract do not arise, and vice versa."

We suppose that it cannot be seriously contended in this case that complainants have any right of action on the contract; it was made between the owners of the church building and the city. The most that they can contend for is that growing out of the contract, between the parties themselves, was a duty owing to the public, including complainants, who might use the building for the purpose of public worship or funeral services; that its duty arises to the dignity of a legal one, for a breach of which the defendant is liable to the complainants.

We apprehend that there would be no contention that there was any such duty owing from defendant to complainants if the building was a private residence or any other private structure, but that because it was a church building, and therefore should be expected to be used by the general public on occasion, the obligation on the part of the contractor to so construct it as to meet these public purposes creates a legal duty to the public, for the breach of which a liability accrues.

This question in our judgment is absolutely settled by the overwhelming weight of authority both in England

and America in our favor and against the contention of appellees herein. The best considered case, and there are many, which we have found and which collates and comments upon all of the authorities *pro* and *con,* is that of *Huset* v. *J. I. Case Threshing Mach. Co.,* decided by the eighth circuit court of appeals (120 Fed. 856), 61 L. R. A. 303. Wharton, Neg. (2 Ed.), 134; *Thornton* v. *Dow* (Wash.), 32 L. R. A. (N. S.), 968 and note, p. 969; *Winterbottom* v. *Wright,* 10 Mees. & W. 109, 61 L. R. A. 307.

It is insisted by appellees in this case, and was so held by the lower court, that because this was a "church building," and therefore more or less public, it became an exception to the rule invoked and contended for by us, but we submit that this contention of theirs, in the light of the authorities, is absolutely untenable. *Curtin* v. *Somerset,* 140 Pa. 70, 12 L. R. A. 322, decided in 1891; 6 Cyc. 62; 16 A. & E. Ency. of Law (2 Ed.), 209; 32 L. R. A. (U. S.) 968 and note; *Kuelling* v. *Roderick Lean Mfg. Co.* (N. Y., 1905), 2 L. R. A. (N. S.) 303; Note to *Thomlinson* v. *Armour Co.,* 19 L. R. A. (N. S.) 923; also, *McCaffrey* v. *Mossburg & G. Mfg. Co.* (R. I.), 55 L. R. A. 822.

But we are not left to the decisions of other courts to get the principles governing this case. Our own court, in the case of *Wilkinson* v. *Water Company,* 78 Miss. 389, has decided the question in our favor. In that case the city of Jackson, representing the entire citizenship of the city, made a contract with the water company, by which it, the water company, was to furnish an ample supply of water at all times to the city and its citizens, for domestic, commercial and fire purposes.

Under this contract, the water company was to maintain a certain pressure of water sufficient to enable the fire company of the city to successfully fight any fires that might occur in the properties of private citizens. This part of its contract it negligently failed to comply with, so that a fire having occurred in or near the prop-

erty because of an insufficient supply of water, or a defective pressure thereof, the result was that Mr. Wilkinson's home was destroyed. He sued the water company on the ground that under this contract it owed to each citizen of the city of Jackson, as well as to himself, a duty in the premises, a breach of which duty would make it liable in damages.

Both the lower court and the supreme court held that these was no such duty. *Lovejoy* v. *Bessemer Water Works Co.*, 41 So. 76.

We are satisfied in our own mind that, in view of all these authorities, there is no escaping the correctness of the contention we are making in this case, and that this court will unhesitatingly take the same view.

*J. B. Dabney,* for appellees.

The principal case cited anl relied upon by counsel for appellant is that of *Huset* v. *J. I. Case Threshing Machine Co.*, 61 L. R. A. 305. By the very principles of law announced in that case as well as all the others bearing on the subject, we are clearly entitled to recover in this action.

The basic principle, the rule or doctrine of recovery in these cases is well stated in the *Huset case, supra,* as follows: "It is a rational and fair deduction from the rules to which brief reference has been made that one who makes or sells a machine, a building, a tool, or any article of merchandise designed and fitted for a specific use, is liable to the person who, in the natural course of events, uses it for the purpose for which it was made or sold, for an injury which is the natural and probable consequence of the negligence of the manufacturer or vendor in its construction or sale." Wharton, Neg. (2 Ed.), p. 134; *Shubert* v. *J. R. Clark & Co.* (Minn.), 15 L. R. A. 818; *Devlin* v. *Smith* (N. Y.), 42 Am. Rep. 311; *Thomas* v. *Winchester,* 6 N. Y. 397; *Mayor* v. *Gunliff,* 2 Ed. 165; *Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 124; s. c. 15 Am.

Rep. 387; *Woodward* v. *Miller* (Ga.), 64 L. R. A. 932; *Carson* v. *Godley,* 26 Pa. 111; *Lewis* v. *Terry* (Cal.), 31 L. R. A. 220; *Ives* v. *Weldon* (Iowa), 54 L. R. A. 854.

From the foregoing it is clear, we submit, that the defendants are liable for the injuries to these appellees. We are willing to rest our case on that of *Huset* v. *J. I. Case Threshing Machine Co., supra,* which is the chief reliance of counsel for appellant, and while the stage coach case and the hotel porch case seem to be in conflict with those above quoted from, they both have the element of private ownership, and at any rate, are more than offset by the cases above cited.

As to the case of *Wilkinson* v. *Water Co.,* 78 Miss. 389, relied upon by appellant, we wish to say that the duty of the water company was necessarily one growing out of its contract with the city. There was absolutely no duty to any one independent of this contract, and the only question was whether the contract between the city and the water company could be availed of by the private citizen on the theory that it was for his benefit. In the instant case, as we have stated, it makes no difference whether the contract was performed or not. It makes no difference whether there was a contract or not.

Having undertaken to do this work, it was the duty of the city to do it in such manner as to make the church safe, and this duty it owed regardless of any contract. Having deliberately set a death trap to save a few dollars, it cannot thus escape the consequences.

*Hudson & McKay,* for appellees.

The question here presented is whether, or not, the respondent city is liable to the complainants for their personal injuries resulting from the collapse of the church building, which was raised by the respondent city through a building contractor. It is true that there was no contractual relation between the complainants and the respondent city, with reference to the manner of raising

the church building or the condition in which it was left. The question really is, did the respondent city owe the legal duty to the complainants, whom the respondent city knew would occupy the building for its appointed purposes, to raise and leave said building so that it would not collapse as it did to the injury of complainants.

We respectfully submit that the respondent city's liability, in this situation, is announced by the adjudged cases and by sound reason and right. In the late case of *Wade* v. *Gray,* 61 So. 168, held that a contractor who had contracted to build public roads, for a county in this state, was liable to a member of the traveling public for injuries resulting through the contractor's negligence in allowing the road to be in a defective condition. We submit that the same principle of law announced in this case is applicable to the case at bar, for the reason that, in the cited case, it is wisely held that although this road contractor owed no contractual duty to any member of the traveling public, who were strangers to his contract with the county, yet, this road contractor owed the legal duty to every member of the public, who might travel the road under his construction and contract, so to maintain the road free from defective condition as not to injure a member of the traveling public. So in the case at bar respondent city, which undertook to raise and support this church building, owed the legal duty to any person who might lawfully use the same for its appointed purposes so to raise and support the church building as that it would not ordinarily injure parties who might so lawfully use it. The existence of this legal duty, under these circumstances is too plain for disputation. Besides the foregoing pointed case, from our own state in this behalf, we quote from 29 Cyc., on Negligence, 478: "It will appear, on the contrary, that the vendor or manufacturer may be held liable to persons with whom he has had no contractual relation, for injury caused by mere negligence in the manufacture of an article harm-

less in kind, but made dangerous by defect, and knowingly putting such articles upon the market in the ordinary course of business without notice of such defect." This statement of the law is supported by the following authorities: 31 L. R. A. 220; 21 L. R. A. 139; 15 L. R. A. 818; 61 L. R. A. 303; 66 L. R. A. 924.

From page 479 of 29 Cyc. we quote: "Where the act consists in the sale and delivery of an article, with knowledge of undisclosed danger and without notice of its qualities whereby any person is injured in a way that might have reasonably been expected," liability accrues and this statement of the law is especially supported in the opinion of Chief Justice SANBORN in 61 L. R. A. 303. In the case of *Huset* v. *J. I. Case Threshing Machine Company,* 61 L. R. A. 303, Chief Justice SANBURN says: "The third exception to the rule is that of one who sells or delivers an article, which he knows to be imminently dangerous to life or limb, to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not.

Of striking application to the case at bar is the case of *Pennsylvania Steel Company* v. *Elmore, etc., Contracting Co.,* 175 Fed. 176, wherein from fraudulent or negligent construction work the court held that, "Where a subcontractor, for the construction of concrete piers for a bridge, with knowledge of the use to which the piers were to be put, and that plaintiff, a subcontractor for the iron work would necessarily place heavy loads and valuable property thereon, wilfully, intentionally, and fraudulently failed properly to mix the concerte and construct the piers in compliance with its contract, and knew the piers were unsafe and insufficient, so that when plaintiff attempted to use them, one of them collapsed and injured plaintiff's property, defendant was liable to plaintiff for the damages sustained; defendant's duty being

one imposed by law, irrespective of contract.'' We invite the court's careful consideration of this last-cited case, because of its striking application to the case at bar.

From page 433-434 of 38 Cyc. we quote: ''No privity of contract is necessary, however, to sustain an action in tort by an individual specially injured by an act or omission constituting a breach of contract, where it also constitutes an invasion of a legal right of, or violation of a legal duty owed to, the plaintiff independently of, or concurrently with, the contract.'' And this authority is most abundantly supported by the copious authorities cited in note 60 thereunder. In the case of *Lewis* v. *Terry*, 31 L. R. A. 220, the supreme court of California holds ''One who sells a folding bed, representing it to be safe for use when he knows it to be dangerous, is liable for injuries caused by the defects in the bed to any person who uses it, although there may be no privity of contract between them.''

Therefore, we respectfully submit, that in view of the *Wade-Gray case, supra,* and the foregoing authorities cited and discussed, that the judgment of the lower court should be affirmed for the reason that the bill of complaint very fully states a clear cause of action against the respondent city.

COOK, J., delivered the opinion of the court.

In changing the grade of certain streets in the city of Vicksburg, appellant undertook to raise the church building of the King David Baptist Church, a colored organization, to the new grade, and employed a contractor to do the necessary work. The bill of complaint alleges that ''on account of the insufficient number and size of the pillars put under the said building, and the poor material used therein, and the negligent and imperfect workmanship, the said church was not safe for the purposes for which it was intended; that, in addition to the above, the said pillars were set upon the surface of the ground, so

that they were likely to be undermined and weakened by water flowing under said church, all of which should, and could, by the exercise of ordinary care and diligence, have been known to said defendants." It is further alleged that after the building had been turned over to its owners, and "when a funeral was being held from said church, the floor thereof gave way, and complainants, along with a number of others, were precipitated to the ground, some twelve or fifteen feet below, with a mass of broken timbers, benches, hot stoves, and humanity, and were bruised and maimed," etc. The complainants were strangers to the contract between the city and the King David Baptist Church, and when the collapse of the building occurred they were attendants at the funeral obsequies of one deceased. Te city demurred to the bill of complaint, which demurrer was overruled, and the city prosecuted this appeal.

Appellant does not challenge the jurisdiction of the court to try this cause. We will consider only one of the grounds of the demurrer, viz.: "(2) That under the facts stated and alleged in said bill, complainants are not entitled to the relief sought for, or any relief." "The general rule is that, after the contractor has turned the work over, and it has been accepted by the proprietor, the contractor incurs no further liability to third parties by reason of the condition of the work; but the responsibility, if any, for maintaining or using it in its defective condition, is shifted to the proprietor." 32 L. R. A. (N. S.) 969.

Before the city can be held liable to complainants, it must be shown that there was some element of deceit, or concealment of the dangerous instrumentality. It is not sufficient to allege negligent construction. It must also be alleged that there was a concealment of this dangerous condition when the building was turned over to its own ers and accepted by them. We think the bill of complaint may reasonably be construed to mean that the neg-

ligent construction and poor material used in the building was obvious, and that the owner accepted the work without demur; and, if this be true, it follows that the owner knew of the defect when it accepted the. building. It must be shown that the owner was unaware of the danger, and it must be shown that the city, or its agent, concealed the defective material and workmanship. For a collation of the authorities, we cite *Thornton* v. *Dow,* 60 Wash. 622, 111 Pac. 899, 32 L. R. A. (N. S.) 968, and notes; *O'Brien* v. *American Bridge Co.,* 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 980, 136 Am. St. 503.

The demurrer should have been sustained.

*Reversed and remanded.*