WERNER et al. v. TROUT et ux.  (No. 7901.)

Court of Civil Appeals of Texas. San Antonio.
Jan. 18, 1928.

Rehearing Denied Feb. 20, 1928.

1. Municipal corporations ⬳809(2)—Contractor, building sidewalk in compliance with specifications furnished by city, where work was. accepted, held not liable for injury resulting because of sloping condition of driveway.

In suit against contractor for injuries sustained by fall because sidewalk at driveway was left in sloping condition, where contractor had complied with specifications and plans furnished by city and work had been accepted by city, *held* that contractor was not responsible for injury; chain of causation being broken.

2. Evidence ⬳513(8)—Expert testimony held inadmissible as to condition of sidewalk at driveway which could be passed upon by jury.

Expert testimony *held* inadmissible as to state or condition of sidewalk at driveway which could be passed upon by jury.

3. Municipal corporations ⬳808(8)—Owner of lot abutting sloping driveway, on which woman fell, held not responsible; driveway being built in accordance with city's specifications.

Owner of lot in front of which sloping driveway was constructed, on which woman slipped and fell and was injured, *held* not responsible, since driveway was constructed in accordance. with plans furnished by city and owner was not the active agent in causing the defect.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Suit by J. E. Trout and wife against Fred Werner and another. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Pope, Pope & Pope, Phelps & Johnson, and Hamilton & Rector, all of Laredo, and Cunningham, Moursund & Johnson and J. D. Dodson, all of San Antonio, for appellants.

Arnold & Cozby, of San Antonio, and M. J. Raymond and Mann, Neel & Mann,.all Laredo, for appellees.

FLY, C. J.  J. E. Trout and Maxie W. Trout, his wife, instituted a suit against Fred Werner and the Southwest Bitulithic Company to recover damages arising from injuries inflicted on Mrs. Trout by a fall on a certain sidewalk in the business portion of the city of Laredo. The cause was submitted to a jury on special issues, and upon their verdict judgment was rendered in favor of appellees against both defendants, now appellants, in the sum of $19,500.

There were eighteen special issues submitted, and in answer to them the jury found that on August 3, 1925, Mrs. Trout slipped on a sloping portion of a driveway across a sidewalk which was in front of the prop-

erty of Werner and that she received the injuries alleged in the petition, that the Bitulithic Company constructed that portion of the sidewalk on which·Mrs. Trout fell and received her injuries, and that the sloping driveway was a nuisance and that it was the cause of the injury. It was further found that the company negligently constructed the driveway, and contributed to or caused the accident, that Werner was guilty of negligence in permitting the sloping part of the driveway to remain smooth and "slick," the condition in which it was constructed, and that negligence caused or contributed to the accident and injury. The foregoing were found as facts to issues repeated in slightly different forms. The jury found that Mrs. Trout was not guilty of contributory negligence in failing to "keep a lookout as she walked along the sidewalk at the place of the accident."

The undisputed evidence showed that the Southwest Bitulithic Company was a street building contractor and had entered into a contract with the city of Laredo to pave and construct certain improvements on that part of the street from which the driveway in question was constructed to the front line of the lot belonging to Werner. It was provided that a certain portion of the costs of constructing the improvements on the street should be paid by abutting owners, and the cost for such construction is itemized in the contract, and it is provided:

"The respective parcels of abutting property and the owners thereof shall pay and be assessed not exceeding one-third (⅓) of the cost of the improvements in that portion of the street or place to be improved abutting the respective parcels of such property; that is to say, one-third (⅓) of such cost to the property on each side of the street, and such cost shall be assessed against such abutting property and the owners thereof, in accordance with the terms and provisions of the city charter of the city of Laredo, and the laws now in force in said city."

It is provided in the specifications attached to the contract for "constructing driveways over curbing at existing driveways, and extending driveways to the curb where concrete driveways exist and constructing shovel dressing terraces between curbs and walks to a plane connecting curb and walk." The specifications provide for the engineer, who is shown in the specifications to be S. F. Crecilius, to make all plans and provide specifications and instructions, and the contractor bound itself to perform the work according to such plans, specifications and instructions of the engineer. Before the company could receive any pay for any part of the work, the engineer would inspect it and make an estimate of the amount. The evidence showed that the work had to be done under the super-

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

vision and with the sanction of Col. Crecilius, the city engineer. It is provided:

"In case of an actual or alleged disagreement or discrepancy between the contract, these specifications, and the plans for the work on file in the office of the engineer, the language and the provisions of the contract shall take precedence and prevail; and the engineer shall determine in each case whether the plans or the specifications shall be followed."

The specifications provide for responsibility of the contractor for injuries to persons or damage to property caused by its negligence "during the progress of or connected with the prosecution of the work." The engineer was given full power and authority to pass on any defects arising from use of materials or manner of construction and have the same altered by the contractor. The whole work was to be under the direct inspection and supervision by the engineers, inspectors, or supervisors. The charter of the city of Laredo gives it "exclusive dominion, control, and jurisdiction in, over, and under the public streets, avenues, alleys, highways, boulevards, and public places and grounds of said city, and he shall have the power to provide for the improvements of any public streets, avenues, alleys, highways, and boulevards, repaving or resurfacing or otherwise improving same, and by the construction thereon of sewers, drains, curbing, gutters, and sidewalks, including engineering work and supervision and other incidental costs, charges, and expenses in connection therewith." The charter grants the authority to assess the cost of constructing curbings and sidewalks against abutting owners. The driveway was on Hidalgo street, and the final contract between the Bitulithic Company and the city of Laredo was made in June, 1923. The city accepted the work on Hidalgo street, including the driveway, on November 6, 1923, upon the recommendation of its engineer. Mrs. Trout was injured on August 3, 1925, nearly two years after the street and driveway were accepted by the city. Werner did not order the driveway, and had no control over its construction. The driveway ran up from the curb, not fully across the sidewalk, but to a line about one-half across the sidewalk. Werner made no suggestions about the driveway, and the city paid the contractor for it. Werner swore that he protested against cutting down the sidewalk for the driveway.

Mrs. Trout testified that there was a flat place just above the slant in the driveway on which she could have walked with safety. She swore, when a photograph of the driveway was shown her:

"I notice the sidewalk here on this picture is only partially taken up with the driveway. This is looking at it the way I was traveling. I observe that there is only a portion of the sidewalk taken up with the driveway. The balance of that sidewalk is perfectly flat. I was walking right along here, and, as I came to this driveway, that is where I slipped. I would not have walked on the driveway rather than on the sidewalk if I had been noticing carefully; certainly I would not have gone there, if I had had my eyes down where I was stepping. If I had been looking, I would not have gone there. I would have gone around and walked on that perfectly smooth sidewalk. I must have continued right straight along the edge of the pavement and undertook to walk right across the driveway—that is my recollection."

The evidence showed, without contradiction that the driveway was constructed under the directions of Forbes, the assistant city engineer.

The Southwest Bitulithic Company was a paving contractor and entered into a contract with the city of Laredo in 1923, to do certain paving on certain streets named, including necessary curbing, sidewalks, and driveways, under the direct control and supervision of the city. Every portion of the work was supervised by the city engineer, and nothing was paid for until it had been favorably inspected by the engineer or inspector and a favorable report made to the city government. The company was compelled to execute its contract as directed by the city engineer. The evidence disclosed that the dimensions, the height, width, and inclination were given by an officer of the city empowered to so act, and that it was built in strict compliance with the plans and specifications prepared by the city engineer. When completed it was accepted and paid for by the city. For nearly two years it was passed by or over by every one who used the sidewalk without complaint or accident, until Mrs. Trout slipped and fell on the inclined part of the sidewalk and received severe and permanent injury. If there was any defect in the construction of the driveway, it was a defect open to any ordinary inspection by the most casual passerby, and the construction was such that a flat surface of sufficient width was left for any pedestrian to pass without stepping on the inclined surface. No fraud or deception is charged in its construction, and it was accepted and paid for by the city as being according to its plan and desire. We think the language of the Supreme Court of Indiana, in the case of Travis v. Rochester Bridge Co., 188 Ind. 79, 122 N. E. 1, in a similar case, is peculiarly appropriate, and gives the law as applied to the facts of this case. The court held:

"In the class of cases to which the one at bar belongs, the work is generally done by the contractor in accordance with plans furnished by the party letting the contract or under his direction and supervision, and the work is subject to inspection before acceptance. In the other class of cases to which reference is made, the machinery or other article manufactured is made according to the plans of the manufacturer and under his direction and subject to his inspection before sale. The differences pointed out between the classes of cases under consid-

eration furnishes a reason for holding that the liability of an independent contractor toward third persons, not parties to the contract, terminates with the completion of the work and the acceptance of the contract, while a similar rule, but somewhat modified, applies to manufacturers selling in the ordinary course of trade. As affecting the liability of a contractor, the acceptance of the work by the other party to the contract operates as the intervention of an independent human agency which breaks the chain of causation so as. to preclude a third party from asserting or relying on any duty on the part of the contractor to use care for his safety in the construction of the work."

[1] While we think the Indiana court stated the law as applicable in that case and this, the facts of this case show that there was no defect in the work performed by the contractor, but he performed it exactly as instructed by his employer, and it was so accepted by the employer. There was no weakness or .defect in the sidewalk, as in the case of the Indiana bridge, but the work was perfectly done, and, if there was any defect, it was in the plans and not in the execution of them. The Indiana view of the law as applicable to such cases as the one under consideration is well supported by the decisions of other states. Memphis Asphalt & Paving Co. v. Fleming, 96 Ark. 442, 132 S. W. 222; Cunningham v. Gillespie Co., 241 Mass. 280, 135 N. E. 105; First Presbyterian Church v. Smith, 163 Pa. 561, 30 A. 279, 26 L. R. A. 504, 43 Am. St. Rep. 808; City of Vicksburg v. Holmes, 106 Miss. 234, 63 So. 454; Wood v. Sloan, 20 N. M. 127, 148 P. 507, L. R. A. 1915E, 766; Sutton v. Otis Elevator Co. (Utah) 249 P. 452. The rule adopted in the cases cited is sustained by common sense and inherent justice. If there was any negligence in the plans of the driveway or in the smooth surface left on it, or if it was a nuisance, the company was not responsible for the plans or condition of surface. It acted under orders as under its contract it was obligated to do, and the city approved of the plans and construction and supervised and accepted it. We sustain the first and second propositions.

[2] The facts in this case did not present a situation in which the aid of expert testimony was admissible. The state or condition of the driveway could be passed upon by a jury without the aid of expert testimony, if it ever is an aid in arriving at a just conclusion. The jury should have known, and probably did know, as much as an expert about the condition of the sidewalk, after hearing the testimony. No matter how the driveway might or should have been constructed, the company built it under the supervision and control of the city of Laredo, and was not responsible for the type or kind of driveway constructed. We need not consider other propositions advanced by the Bitulithic Company.

[3] Fred Werner, owner of the lot in front of which the driveway was constructed, had no more control over the construction of the driveway than he had over the construction of the pavement on the street on which his property abutted. He was not consulted as to the construction of the driveway, and paid for it under an assessment levied by the city, just as he paid for his portion of the street pavement. To the city alone was confided the power and authority to provide for the paving of streets, the building of sidewalks, and the city reserved to itself the right to make the plans and specifications and held exclusive direction and supervision of the work. Werner had no power or authority to direct as to the type or kind of sidewalk or driveway he may have desired and had no voice whatever in connection with the same. The owner of the abutting lot had no power to change, to lower or raise, the driveway, but that power belonged to the municipality alone. Dillon, Mun. Corp. § 1132, and footnotes. As said by Dillon, Municipal Corporations, § 1728:

"It has been held that, where an injury has resulted from a defect in the sidewalk, negligently permitted by the city to continue, and for which the city is compelled to pay, there is no recourse over against the owner of the lot in front of which the defect existed, and no liability on the part of such owner to the party injured, arising from the mere fact of ownership. Before the lot holder can be held responsible, there must appear some neglect of a legal duty on his part or he must have trespassed upon the sidewalk by obstruction upon the surface, made excavation beneath, or done some act rendering the same unsafe, and such negligence, obstruction, excavation, or act must have caused the injury."

That is, the owner must have been the active agent in causing the defect or obstruction in the sidewalk in order to be held responsible for injuries sustained thereby. This is the doctrine of the Texas courts. In the case of Kampmann v. Rothwell, 101 Tex. 535, 109 S. W. 1089, 17 L. R. A. (N. S.) 758, the Supreme Court of Texas held Mrs. Kampmann liable for obstructions on the sidewalk because she was a party to the placing of the obstruction and the contractor was held liable because Mrs. Kampmann was not supervising or directing the manner of the work. In the case of City of San Antonio v. Wildenstein, 49 Tex. Civ. App. 514, 109 S. W. 231, this court, through Associate Justice Neill, held:

"Sidewalks are uniformly regarded as a part of the street, and the duty primarily is upon the city to exercise ordinary care to maintain them in a reasonably safe condition for the use of the public; and, ordinarily, an abutting owner is under no duty to the public to keep the sidewalk in front of his premises in repair."

We conclude that the evidence failed to show that the Southwest Bitulithic Company and Fred Werner, or either of them, were

liable in damages for the accident that happened to Mrs. Trout on the driveway entering the property of Werner from Hidalgo street, and the judgment will be reversed, and the cause remanded.