John STRAKOS, Petitioner,

v.

John H. GEHRING, Respondent.

N. M. HUBBARD, INC., Petitioner,

v.

John H. GEHRING and John Strakos,
Respondents.

No. A–8422.

Supreme Court of Texas.

June 27, 1962.

Rehearing Denied Oct. 3, 1962.

Graves, Dougherty, Gee & Hearon, Wm. L. Garwood, Austin, and James G. Sargent, Houston, for Hubbard, Inc.

Scardino & Regnier, and Hill, Brown, Kronzer & Abraham, Robert L. Steely, Houston, for Strakos.

Painter & Painter and Kucera, Lay & Lightfoot, Houston, for Gehring.

1. The jury rendered findings favorable to Austin Road Company, a third defend-

NORVELL, Justice.

Based upon jury findings, John Strakos recovered a judgment against John G. Gehring and N. M. Hubbard, Inc.[1] Hubbard was awarded indemnity over against Gehring. The Court of Civil Appeals affirmed the judgment against Hubbard but decréed that Strakos take nothing against Gehring. 345 S.W.2d 764. We granted the applications for writ of error filed by Hubbard and Strakos and the judgment of the Court of Civil Appeals is now reversed and the judgment of the trial court modified so as to provide that John Strakos do have and recover of and from John H. Gehring and N. M. Hubbard, Inc., jointly and severally, the sum of $50,437.00, with interest thereon at the rate of six per cent per annum from November 16, 1959 until paid, and that N. M. Hubbard, Inc. do have and recover over and against John H. Gehring any and all sums in excess of one half of the amount of the judgment that may be collected or made under execution by John Strakos from N. M. Hubbard, Inc. as and for contribution under Article 2212, Vernon's Ann.Tex.Stats. Similarly, the decree of the trial court is modified so as to provide that John H. Gehring do have and recover over and against N. M. Hubbard, Inc. all sums in excess of one half of the amount of the judgment that may be collected or made under execution by John Strakos from John H. Gehring as and for contribution under Article 2212. The judgment of the trial court as so modified is affirmed.

Strakos severely injured his leg when he stepped into a hole alongside the Crosby-Huffman Road, which was being incorporated into the State Farm-to-Market Road System. Harris County had secured additional right of way and agreed to relocate the fencing along both sides of the road. Gehring contracted with the county to remove the fences and place them along the new right-of-way lines. Gehring did not

ant in the trial court, and this party need not be further noticed.

fill any of the holes left by the removal of posts from the original fence line.

In the meantime, the State of Texas contracted with the Austin Road Company to resurface and widen the road. Austin engaged Hubbard as a subcontractor to do the dirt work necessary to prepare the road for surfacing. The State required the road to be kept open for public use during construction, but warning barricades were erected at each end of the eight-mile section of the road under construction and covered by the Austin contract.

On July 2, 1956, after Gehring had finished and Hubbard had commenced work upon the stretch of eight-mile road involved, Strakos approached a gate in the fence at the I. C. Matthews farm, where he was to do some carpentry work. This fence had been moved about ten feet back by Gehring under his contract. Strakos fell into a hole along the border of the entrance way to the Matthews gate and about ten feet distant therefrom. Gehring had not filled this hole nor erected a sign or other device to give warning of its existence when he completed the moving of the fence along the boundary of the Matthews farm. The hole was approximately three feet in depth and virtually hidden by grass and other vegetation. Strakos suffered a permanent shortening of his leg and a permanent aggravation of an arthritic condition of his back.

The Court of Civil Appeals, relying on the case of Mansfield Construction Co. v. Gorsline, Tex.Com.App., 288 S.W. 1067,[2] reh. den., 292 S.W. 187, exonerated Gehring from all liability on the holding that Gehring owed no *duty,* either by contract or by law, to protect the traveling public *after* acceptance of his work by Harris County. Despite the fact that the formal acceptance of Gehring's work and payment by the Commissioners Court was not until July 12, 1956, the Court of Civil Appeals found sufficient evidence to support the jury finding that

there was a "practical acceptance" on June 18th or 19th, 1956, when the work was inspected and approved by county officials.

The Gorsline case, supra, is apparently the primary authority in Texas for the doctrine that an independent contractor is relieved of any duty of care to the general public after acceptance of his work by his employer. This doctrine, together with the rule that a manufacturer was not liable to the general public for injuries from defective products sold through intermediate suppliers, seems to have developed from the case of Winterbottom v. Wright, (1842) 10 M & W 109, 11 L.J.Ex. 415, 152 Eng.Rep. 402. In that case, there was dicta to the effect that only parties to a contract could recover for negligent performance of the contract. Thus, "privity of contract" became the earliest rationale for denial of liability in both types of cases. See Comment, 1 Baylor Law Rev. 420, 37 Tex.Law Rev. 354.

No sooner had this doctrine developed and been applied to the two classes of cases mentioned, than the courts began to engraft exceptions upon them. As regards products liability for manufacturers and processors, the exceptions largely swallowed the rule. With Judge Cardozo's opinion in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, it became established that a manufacturer has an affirmative *duty to those who may be reasonably expected to use his products or to be in the vicinity of such usage,* and hence breach of this duty by the production of articles that are dangerous to human safety while being reasonably used, will establish tort liability. See, Annotation, 164 A.L.R. 569.

The rule of the MacPherson case was not immediately applied in the contractor cases. Instead, the courts continued to apply the "accepted work" doctrine, giving several justifications in addition to the privity of contract rationale. See Annotation, 13 A.

**2.** Although the judgment of the Supreme Court in Gorsline was rendered upon the recommendation of the Commission, the opinion was not adopted nor were the holdings of the Commission expressly approved by the Supreme Court.

L.R.2d 191. Gradually, however, a general trend away from nonliability for negligence in this area became evident, but the primary vehicle for this trend was a group of well-established exceptions to the general rule instead of its outright repudiation. See, Annotation, 58 A.L.R.2d 865, § 2(d).

■ We think however, in the interest of clarity in the statement of the law, we should not concern ourselves with exceptions which, as in the cases of products liability, have largely emasculated the rule but should now disapprove the doctrine set forth in *Gorsline* in 1926 that a contractor cannot be held liable in tort for injuries occurring after the acceptance of his work by his employer although the cause of injury was the condition in which the contractor left the premises upon the completion of the work. Under the particular facts of this case it could have been reasonably anticipated that the leaving of a hole near the approach of a farm access gate could cause injury if the hole be left unfilled for a comparatively short period of time. It is difficult to see why a failure to use ordinary care to protect those using the farm access road would be terminated by an agreement between the contracting parties. Why should a distinction be made between an injury occurring the day before the acceptance of the contractor's work by the county (considering liability to exist at that time) and an injury occurring the day after the work was contractually accepted? The only authority cited in *Gorsline* for the holding now in issue was a statement from 14 R.C.L. 86 to the effect that an employer generally incurs responsibility to the public for defective work after he accepts it from the contractor. The fact that one who assumes control over a dangerous condition left by a contractor may be liable for injuries resulting therefrom does not necessarily mean that he who creates the danger should escape liability.

Seemingly this Court has not cited the Gorsline opinion except in Driver v. Worth Construction Co., 154 Tex. 66, 72, 273 S.W. 2d 603, and then only for the general proposition that there can be no negligence without a breach of duty. The Court specifically observed in the Driver case that there was no contention made that the contractor's work had been accepted and that all the evidence showed the roadway involved there was still under construction.

A number of Court of Civil Appeals opinions have cited *Gorsline,* but none of these involved the "accepted work" doctrine. Usually, the case is cited in support of the general rule that negligence presupposes a duty or to sustain the proposition that a contractor, while still performing highway work, owes a duty of care to the traveling public. Gehring calls our attention to Lewis v. Taylor, Tex.Civ.App., 339 S.W.2d 917, no wr. hist. However, the issue there involved was whether the employer was responsible for injuries to a third person caused by defective work which he had accepted from the contractor. Such cases as this are not determinative of the contractor's liability under the situation presented by the present record. A few cases have considered the "accepted work" doctrine without citing the Gorsline case, but insofar as statements therein may conflict with what is said here, they should no longer be considered authoritative.[3]

Our rejection of the "accepted work" doctrine is not an imposition of absolute liability on contractors. We simply reject the notion that although a contractor is found to have performed negligent work or left premises in an unsafe condition and such action or negligence is found to be a proximate cause of injury, he must nevertheless be held immune from liability solely because his work has been completed and accepted in an unsafe condition.

3. See, Werner v. Trout, Tex.Civ.App., 2 S.W.2d 525, wr. ref.; Nedler v. Neece Lumber Co., Tex.Civ.App., 63 S.W.2d 403, no wr. hist.; Jones v. Beck, Tex.Civ.App., 109 S.W.2d 787, wr. ref.; Hartford v. Coolidge-Locher Co., Tex.Civ.App., 314 S.W.2d 445, no wr. hist.

It is urged that we should cling to the "accepted work" doctrine for the reason that, despite its practical harshness and theoretical unsoundness, it affords a simpler and more workable approach to the problem. Even if we were to regard simplicity as a paramount consideration in defining legal principles, we would nevertheless be compelled to reject this suggestion. The effect of our holding is to bring Gehring within the general rules of tort litigation, where the jury will resolve the basic questions of negligence and proximate cause, subject to the usual guidance and review by the trial and appellate courts. The retention of the "accepted work" doctrine would inevitably yield the same unwieldy results as have come about in virtually every other jurisdiction that has formally adhered to the rule. The rule eventually becomes enveloped by complex exceptions to cover such situations as nuisance, hidden danger, and inherently dangerous conditions. The result would be that in each case, after having first decided that there was an acceptance of the work, we would then have to decide issues involving all the various exceptions to the rule and in case any exception were found applicable, the basic issues of negligence and proximate cause would still remain for consideration. We believe that outright rejection of this oft-repudiated and emasculated doctrine would restore both logic and simplicity to the law.[4]

It may be in some cases, that at the time of the completion of the work, certain events may be reasonably expected to occur which, coupled with the passage of time, would render injurious consequences of leaving premises in an unsafe condition wholly unforeseeable. For example in this case, a jury might reasonably hold that in view of the circumstance that Hubbard and Austin Road Company were obligated to grade, pave and finish the road, Gehring could not foresee an injury occurring after the completion of this finishing work during the process of which the holes left by him would ordinarily have been filled and rendered harmless. Hubbard's duty and proposed action in and on the premises, as well as those of Austin Road Company, are circumstances which bear upon the problem of foreseeability. It may also be true that in certain cases, factors or conditions may arise after the completion of the work, including the lapse of a substantial period of time, such as would compel a finding that independent causes had intervened to produce the injury. See Restatement of Torts, 1948 Supp., § 433. An injury suffered about two years after the contractor's work had been accepted was involved in Werner v. Trout, Tex.Civ.App., 2 S.W.2d 525, wr.ref. The Court, in applying the "accepted work" doctrine said:

> "As affecting the liability of a contractor, the acceptance of the work by the other party to the contract operates as the intervention of an independent human agency which breaks the chain of causation so as to preclude a third party from asserting or relying on any duty on the part of the contractor to use care for his safety in the construction of the work."

4. For example, the jury here found that the hole near the Matthews gate which was left by Gehring was "inherently dangerous." That term was defined as "something which in and of itself is reasonably calculated to cause harm." Considering the position and nature of the hole, its proximity to the approach to the Matthews gate and the surrounding vegetation, it would be difficult to dispute a finding that the hole was "inherently dangerous." This would involve a recognized exception to the accepted work doctrine, but for practical purpose there is little difference between saying that the hole was reasonably calculated to cause harm and that Gehring could have reasonably foreseen that injury would result from his leaving the unfilled and unguarded hole. For a discussion of this matter, see Annotation 58 A.L.R.2d 856, l. c. 871. As pointed out therein, the simpler approach lies with the outright repudiation of the "accepted work" doctrine and the adoption of one which recognizes that "liability should issue from negligence in the face of danger to others that may be reasonably foreseen."

While we are not in agreement with the arbitrary and mechanical operation of the "accepted work" doctrine as applied in that case, the language above quoted suggests a proper analysis, although the question of causation (foreseeability) which controls liability should be determined from the facts and circumstances of each particular case, and except where reasonable minds cannot differ, the issue is one for the jury. Absence of proximate cause is not established as a matter of law simply because premises in a dangerous condition or a contractor's defective work has been accepted. It should perhaps be noted that the facts and circumstances of the case before us do not present a situation involving an injury suffered after a road had been graded, surfaced and finally completed by another contractor, nor one in which an injury occurred at some remote period of time.

Comparatively few courts have squarely considered what distinctions, if any, prevent the MacPherson rule, announced in 1916, from applying to contractors. In Travis v. Rochester Bridge Co., 188 Ind. 79, 122 N.E. 1, quoted in Werner v. Trout, supra, the distinction suggested is that manufacturers have more control over their product with less supervision by others than do contractors generally and should therefore be more responsible to the general public for the results of that work. Thus, in the Werner case, the Court noted that the contractor performed the work "exactly as instructed by his employer." Further, that "the work was perfectly done, and, if there was any defect, it was in the plans and not in the execution of them." 2 S.W.2d 525, 1. c. 527. We believe that such facts as these properly relate to the question of negligence, not duty. If the contractor's work has been negligently performed, there should be a basis for liability just as there is for manufacturers under the MacPherson rule. Acceptance of defective work should not be a legal excuse for the negligent performance of that work, nor for the leaving of premises in a dangerous condition. See Note,

37 Tex.Law. Rev. 354; also, Note, 62 Harvard Law Rev. 143.

The courts of other jurisdictions and numerous legal writers have reconsidered the original "accepted work" doctrine and the many exceptions which have slowly emasculated it. In 1934, the editors of the Restatement of Torts suggested, in section 385, that one who erects a structure or creates any other condition on land is "subject to liability to others within or without the land for bodily harm caused to them by the dangerous character of the structure or condition *after his work has been accepted* by the possessor under the same rules as those * * * determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others." (Italics supplied) Two leading writers in the field of torts have noted with approval that the modern approach is to place contractors on the same footing as manufacturers of goods and apply the same general principles of negligence even after acceptance of the work. Prosser, Torts, 2d Ed., § 85; Harper and James, Torts, Vol. 2, § 18.5.

In Hanna v. Fletcher, 97 U.S.App.D.C. 310, 231 F.2d 469, 58 A.L.R.2d 847, cert. den. 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501 a tenant sued his landlord and a contractor who had undertaken to repair the stairway upon which he was injured. The trial court dismissed the suit as to the contractor, holding that there could be no liability as a matter of law because his work had been accepted prior to the accident. In reversing the trial court, the Court of Appeals reconsidered and repudiated the "accepted work" doctrine, expressly overruling one of the leading cases supporting the doctrine, Ford v. Sturgis, 56 App.D.C. 361, 14 F.2d 253, 52 A.L.R. 619, certificate dismissed per curiam, 266 U.S. 584, 45 S.Ct. 126, 69 L.Ed. 453. In the course of its opinion, the Court analyzed and rejected three of the major rationales of the doctrine, viz., privity of contract, the general policy ground of limiting liability, and the theory that acceptance of the work

operates as an intervening cause as a matter of law. The Court said, "The cause must be decided on the facts, not by a legal fiction set up to bar a factual decision." The ultimate holding of the Court as to the contractor was expressed in this language:

"The bridge described in the MacPherson case between the manufacturer of an article and its third party user, not in privity of contract with the manufacturer, is the same as that between a landlord's contractor or repairman and the tenant of the premises repaired; for in each case negligent conduct often may be expected to result in injury to one reasonably forseen as a probable user."

In Russell v. Whittcomb, Inc., 100 N.H. 171, 121 A.2d 781, the Supreme Court of New Hampshire reversed the trial court judgment, which had denied liability against the defendant contractor on the basis of the "accepted work" doctrine. The case involved alleged negligence in improperly refilling an excavation in a city street. The Court took note of the general rule of non-liability after acceptance and observed that "the reasons advanced in its behalf have not been entirely satisfactory as indicated by the fact that various flexible exceptions have been developed." The Court then announced the rule that contractors "should be held to a general standard of reasonable care for the protection of third parties who may be foreseeably endangered by the contractor's negligence even after acceptance of the work." It should be noted that the Court went on to add a "qualification" that if the employer discovers the danger or it becomes obvious to him, his responsibility "supersedes" that of the contractor. We cannot subscribe to this latter proposition. The employer's awareness of the danger has no bearing on the contractor's *duty* of care. It could, of course, be material to the question of proximate cause or to the employer's negligence in accepting the work and failing to remedy a dangerous condition.

The case of Krisovich v. John Booth, Inc., 181 Pa.Super. 5, 121 A.2d 890, also involved injuries resulting from alleged negligence in connection with excavating a ditch near a public sidewalk. In affirming a judgment of liability against the contractor, the Court rejected the "accepted work" doctrine and the cases cited to support it. Relying on the Restatement of Torts, § 385, Grodstein v. McGivern, 303 Pa. 555, 154 A. 794, and Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 68 A.2d 517, the Court stated that the "epochal" MacPherson decision has been engrafted on the law of practically all jurisdictions. It was held that the contractor had a "social-legal" duty of care, and that he was properly charged with negligence for failing to guard against dangers foreseeable to a reasonable human being.

Other recent cases and legal writings announcing the modern rule and criticizing the old rule are listed in the Annotations appearing in 58 A.L.R.2d 867, § 53.

■■■ In the present case, among other findings, the jury has found that Gehring failed to fill the posthole in question, that he failed to place any warning object in the hole, that he failed to clear the grass and weeds from around the hole and that he failed to place a barricade around the hole.[5] Each of these omissions was found to be negligence and a proximate cause of the injuries suffered by Strakos. While Gehring asserts he was not liable as a matter of law, it is not specifically contended here that there is no evidence in the record to support these several findings. We cannot hold that, as a matter of law, the injury to Strakos was not foreseeable by Gehring when he left the unguarded postholes along the road.

5. The jury answered "We do not" to an inquiry as to whether or not they found that on or before June 19, 1956, Gehring "had completed all work under his contract with Harris County, Texas in ac-cordance with the plans and specifications thereof as a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances."

Clearly Hubbard's negligent failure to correct or warn of the dangerous condition, which is hereinafter noticed, was not automatically a superseding cause of Strakos' injury. Restatement of Torts, § 452. Instead, the facts of this case present a situation of "concurrent negligence" which operated to produce the injury. Tex-Jersey Oil Corporation v. Beck, 157 Tex. 541, 305 S.W.2d 162, 166, 68 A.L.R.2d 1062; Walker, Inc. v. Burgdorf, 150 Tex. 603, 244 S.W. 2d 506, 509; McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442, 447; Gulf, C. & S. F. Ry. Co. v. Ballew, Tex. Com.App., 66 S.W.2d 659, holdings approved by the Supreme Court. In such a case, "all persons whose acts contributed to the injury are liable therefor, and the negligence of one does not excuse the negligence of the other." Atchison v. Texas & P. Ry. Co., 143 Tex. 466, 186 S.W.2d 228, 231.

Gehring's defense that his contract did not mention his filling the vacant postholes cannot be accepted. Gehring's contract neither required nor prohibited the filling of these postholes, but in any event his liability lies in tort and is not contractual. Liability is grounded in the public policy behind the law of negligence which dictates that every person responsible for injuries which are the reasonably foreseeable consequence of his acts or omissions.

Hubbard asserts that if anyone is liable for Strakos' injuries it is Gehring and that should he (Hubbard) be held responsible in any way, he should have judgment over against Gehring for common law indemnity. However, his essential contention is that under the undisputed facts in the case there was no duty of care owed by Hubbard to Strakos and hence no evidence supporting the jury's findings of negligence on the part of Hubbard.

The jury found that Hubbard was negligent in that he failed to scrape and clean the area around the holes caused by the removal of the fence posts, failed to fill the holes and failed to set up signs or warning devices in and around the holes. Hubbard's basic argument is that he was under no duty of care at the time of the accident because the facts show that he had no control over the situs of the accident at the time it occurred. The jury found that Hubbard had the "right of control" of the land where the hole in question was located and we believe that in the absence of special exception this issue was comprehended by the pleadings. Hubbard argues that his contract created no duty as to the condition of the right of way except as to particular units or divisions of the work area over which he had assumed control and where he was actually working; that he had not brought the hole into being, and had not begun work on the segment or unit of road which ran past the Matthews farm.

Hubbard's argument rests upon these facts: The section of roadway covered by the Austin Road Company's contract runs approximately north and south between Crosby and Huffman and is about eight miles long. The plans of the State Highway Department divide the road into "stations", each 100 feet apart and designated by numbers. The stations start with No. 905 at Huffman and continue with progressively higher numbers until station No. 1328 is reached at Crosby. The I. C. Matthews farm is at Station No. 1060. Hubbard's actual work commenced on June 25, 1956. He started at Huffman, Station No. 905, which is north of the Matthews farm, and also at the Gum Gulley road intersection, Station No. 1133, which is south of the Matthews place. From June 25 until July 2, the date of the accident, Hubbard's work had taken him down the road from Huffman toward Crosby, as far as Station No. 971. Thus, although he had been working on both sides of the Matthews farm, his operations had not brought him to within a mile of the place of the accident at the time it occurred.

As to the relevant contractual provisions, the general contractor, Austin Road Company, undertook in its contract with the State to provide for the safety of the travel-

ing public. For example, one provision of the contract stated:

"The Contractor shall provide and maintain adequate barricades, warning signs, flares, flags, and flagmen at such points and for such periods of time as may be required to provide for the safety and convenience of public travel and Contractor's personnel, and as directed by the Engineer. Flagmen shall be English speaking, courteous, well informed, physically and mentally able effectively to perform their duties and in safeguarding and directing traffic and protecting the work, and shall be neatly attired and groomed at all times while on duty. Flagmen, when directing traffic shall use the standard flags and signals shown in Instructions to Flagmen published by the Texas Highway Department."

The contract between Austin Road Company and the State was referred to and made a part of the contract between Austin and Hubbard. In the latter contract, Hubbard agreed to do generally all the dirt work required by the former contract, such as cleaning and scraping the shoulders; removing trees, shrubs, and vegetation; widening the roadway and moving the ditch back; and rolling, sprinkling and packing the roadway. Hubbard's contract then provided:

"Party of the Second Part hereby assumes the entire responsibility for all obligations and requirements of Party of the First Part contained in the original contract *connected with the particular units of work which this contract covers* and agrees to do the work entirely in accordance with the plans, specifications and special labor provisions of the original contract and to the satisfaction of the Engineer in charge of the same, and of the Party of the First Part.

"Party of the Second Part shall assume all liability, directly or indirectly connected with the work done under

this contract and to guarantee and save harmless Party of the First Part from all claims and damage suits of whatever nature, arising in connection therewith." (Italics supplied)

Stressing the italicized phrase of the contract set out above, Hubbard argues here that although he assumed the "entire responsibility" for the contractor's obligations under the original contract, including the detailed safety responsibilities related above, this responsibility only attached to the particular units of work actually being done by Hubbard and not to the overall project.

We cannot ascribe such a limited scope to these provisions. Previous Texas cases construing almost identical contractual provisions on safety responsibilities indicate that such provisions place a broad duty on contractors to provide for the safety of the public within the area under construction. See John F. Buckner & Sons v. Allen, Tex. Civ.App., 272 S.W.2d 929, wr. dism. on second appeal, 289 S.W.2d 387, no wr. hist.; City of Austin v. Schmedes, Tex.Civ.App., 270 S.W.2d 442, reversed in part, 154 Tex. 416, 279 S.W.2d 326, 52 A.L.R.2d 680; Eubanks v. Schwalbe, Tex.Civ.App., 55 S. W.2d 906 affirmed on this point United States Fidelity & Guaranty Co. v. Eubanks, 126 Tex. 405, 87 S.W.2d 248. Further, another provision in the original contract with the State provided that: "The safety of the public and the convenience of traffic shall be regarded as of *prime importance* during construction * * * public safety and convenience and provisions therefor, made necessary by the work, shall be the direct responsibility of the Contractor and shall be performed at his entire expense." (Italics supplied). The "definitions" section of the contract stated that by the term "the work" was meant "The completed work contemplated in and covered by the contract."

■ The law places a duty to warn of dangerous conditions on a public highway upon one who creates such conditions or who is in control of the area and permits such conditions to persist. Austin Road

Company v. Pope et al., 147 Tex. 430, 216 S.W.2d 563; Adams v. Corbin, Tex.Civ. App., 301 S.W.2d 209, wr. dism.; Wedegartner v. Skoruppa, Tex.Civ.App., 236 S.W.2d 216, no wr. hist.; Eubanks v. Schwalbe, supra; Overstreet v. McClelland, Tex.Civ.App., 13 S.W.2d 990, wr. dism. Also, an occupant of land has the duty to make and keep the premises safe for the use of persons properly thereon. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853, and authorities cited therein.

Conceding that Hubbard had not actually brought his operations to the exact site of the accident by the day of its occurrence, a fact which Strakos disputes, we cannot agree that this fact renders the legal principles above stated inapplicable to Hubbard. The evidence in the record is sufficient to support the Court of Civil Appeals holding that Hubbard was in control of the situs of the accident. For example, the barricades at both ends of the contract area were maintained by Hubbard. Hubbard knew that the fences were being moved back before his operations were to begin, and admitted that he knew he would be the first to work along the fence line after it was moved. Although Gehring did not notify Hubbard specifically that the postholes were left unfilled, Hubbard's contract with Austin recites that he had "gone over carefully the location of work covered by his contract and is thoroughly familiar with same."

It seems clear that the general nature of Hubbard's work would have resulted, sooner or later, in correcting the condition which caused the injury here. Thus, had the entire contract area been cleaned and scraped at the outset, the injury to Strakos may have been prevented. It is undisputed that the entire road could have been cleaned and scraped in a half day or, at the most, a full day. Hubbard maintains, however, that it is customary in his business, and more advantageous economically, to proceed with the work section by section, as he did. He cites the provision in his contract with Austin that the work involved would be conducted "in such sequence as First Party

(Austin) shall direct." Hubbard then argues that Austin never told or requested him to scrape the entire area at the outset, and that his section-by-section approach was "acceptable" to Austin. Nevertheless, the testimony by Austin reveals that Hubbard was given and had full discretion to blade the area around the postholes and to clean and scrape in advance of his major operations. Hubbard's contract provided for him to work as an independent contractor, with "full control of the work to be done in fulfilling this contract." Hubbard decided to work section by section without checking ahead for hidden dangers. He must assume liability for any injuries attributable to that decision.

It does not necessarily follow, as Hubbard argues, that a finding of control over the situs of the accident here would result in his liability for accidents occuring anywhere along the road from the very first instant that Hubbard began his work. The fact that Hubbard was under a duty of care does not necessarily mean that he *breached* that duty. There must still be evidence that Hubbard failed to act as a reasonably prudent man would under the circumstances, and in the present case there is ample evidence to support the jury's specific findings of negligence and causation.

In his application for writ of error Hubbard raises certain alleged errors relating to two motions for a mistrial overruled by the trial court, and a motion to supplement the record in this case overruled by the Court of Civil Appeals. We have given these issues due consideration, but in order not to unduly lengthen this opinion, we simply state that the Court of Civil Appeals has correctly disposed of these contentions.

█ Hubbard's final argument is that if Gehring be not entirely liable for Strakos' injury, he should at least be required to contribute to the judgment against Hubbard. The right of contribution among tortfeasors was established in Texas by the enactment of Art. 2212, Vernon's Ann.Civ.Stats. By its own terms, this statute does not apply in

any case where the right of contribution or indemnity already exists by statute or under common law. For reasons of public policy, the common law denied contribution among joint tortfeasors. However, an exception was allowed where the tortfeasors did not stand in pari delicto with each other. In such cases the common law allowed indemnity. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609; Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W. 2d 995; Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301. Article 2212 has no application here if the situation is one where indemnity exists under the common law.

In Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301, the plaintiff was injured when the streetcar in which she was riding collided with a truck at a street intersection. The jury found the truck driver negligent in several respects, but acquitted the streetcar company of any acts of negligence. The trial court had declined to instruct the jury that the streetcar company was under a "very high degree of care" for protection of its passengers and that breach of this extraordinary duty would be negligence. On appeal, the truck driver complained of the trial court's action, arguing that the jury might have found the streetcar company negligent had it been apprised of this higher duty. In that event, the truck driver argued that he would be entitled to contribution under Article 2212. Rejecting this argument, the Supreme Court held that as the jury had found that the streetcar company had exercised ordinary care and that the truck driver had not, the fact that the trial court had failed to charge upon the high degree of care owed by a common carrier to a passenger was immaterial insofar as Glazer, the owner of the truck, was concerned, for had the jury found that the streetcar company failed to exercise a *high degree* of care, this would not place the company in pari delicto with Glazer whose truck driver had failed to exercise *ordinary* care. The case was therefore one of common-law indemnity rather than statutory contribution and Glazer, as the principal offender, being guilty of a more aggravated species of negligence than a failure to exercise a high degree of care, was in no position to complain of the failure of the court to give the "high degree of care" instruction.

In Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, the plaintiff was injured by a fall at the entrance of a drugstore. He sued both the lessor and lessee of the premises, and both were found negligent in failing to keep the premises in a reasonably safe condition for use. In deciding that the lessee was entitled to indemnity from the lessor, this Court used the following test:

"Where the injury forming the basis for the judgment against the joint tort-feasors results from a violation of a duty which one of the tort-feasors owes to the other, the latter, at common law, is entitled to contribution or indemnity from the former."

The Court found that the lessor had breached a duty to the lessee, as well as to the plaintiff, because by the terms of their lease, the lessor had reserved at least joint control over the entrance and had expressly obligated itself to the lessee to keep the entrance in repair. Since a common-law right of indemnity existed, Art. 2212 was held to be inapplicable.

In City of San Antonio v. Smith, 94 Tex. 266, 59 S.W. 1109, plaintiff sued the city and recovered damages for nuisance. It was alleged that the city's sewer system emptied upon its sewer farm below the city; that the sewer farm bordered on Peidra creek; that the city negligently permitted the sewage to be discharged into the creek and thence into the San Antonio River; and that this resulted in pollution of the water and damage to plaintiff's premises situated on the river. The city answered that for the immediate past two years, the sewer farm had been in the sole possession of Hildebrand and Hamilton as tenants of the city; that the tenants had exclusive

control of the waters and sewage during the time involved; that the city had provided a tract of land where sewage could be consumed normally without injury to the plaintiff; and that the tenants, without the city's authority, had diverted the waters into the creek and river, with resulting damage to plaintiff. On appeal, it was held that although the city might still be vicariously liable to the plaintiff for breach of a duty of protection, it would be entitled to indemnity from its tenants, who were the active wrongdoers.

These cases illustrate three approaches used to establish a common-law right of indemnity. One involves the concept of "different qualities" of negligence; another involves a breach of duty as between tortfeasors; the third gives indemnity to the tortfeasor who is only vicariously liable by operation of law. We believe that the present case is not susceptible to any of these approaches and that neither Gehring nor Hubbard is entitled to indemnity. Therefore, the provisions of Art. 2212 become relevant.

In Austin Road Company v. Pope, 147 Tex. 430, 216 S.W.2d 563, Austin was the general contractor in a project to pave a city street. Pope was a subcontractor, engaged to haul materials in his truck to a large concrete mixing machine maintained in the area. While Pope's truck was backing along a narrow strip of pavement towards the mixer, he ran against the plaintiff, an employee of another subcontractor, causing him serious bodily injury. The jury found Pope negligent on several counts, including failure to keep a proper lookout and failure to sound his horn. Austin's negligence consisted of failing to maintain a watchman in the vicinity of the work. On appeal, this Court affirmed a judgment of contribution between Austin and Pope, stating that there were no facts or findings to establish varying degrees of negligence on the part of the tortfeasors. The Court said:

"Either one or both might have prevented the wrong. Neither did. Each owed the other the same due care, and each owed the duty to exercise ordinary care for the safety of the injured party. Both violated these duties. Consequently, each was guilty of the same quality of negligence toward the injured workman. Thus they stand in pari delicto with each other and must, under the statute, (Art. 2212) share equally the burdens arising from their wrongful conduct."

This language has application to the case at hand. See also, Dallas Ry. & Terminal Co. v. Harmon, Tex.Civ.App., 200 S.W.2d 854, error refused.

For the reasons stated, judgment is rendered as indicated in the forepart of this opinion.

The judgment of the Court of Civil Appeals is reversed. The judgment of the trial court is modified and as modified, is affirmed.

WALKER, J., concurs in the result.

CALVERT, C. J., and GRIFFIN, J., dissent.

GRIFFIN, Justice (dissenting).

This is another case in which the majority of the Court sets aside and changes a rule of law that has been well established in this jurisdiction for many years.

I agree with the Court of Civil Appeals in releasing Gehring from any liability to Strakos and to Hubbard. I also agree that Hubbard is liable to Strakos for his injuries suffered.

The case of Mansfield Construction Co. v. Gorsline, (Comm. of Appeals) 1926, 288 S.W. 1067, rehearing overruled 292 S.W. 187, recognized and established the rule in Texas that, after the acceptance of a contractor's work by the owner, or one rightfully in possession for the owner, the contractor who has carried out his contract, is

not liable to third parties for injuries sustained by virtue of the completed work, or defects therein. The majority recognizes that this is correct.

In Werner v. Trout, (Tex.Civ.App.1928), 2 S.W.2d 525, writ refused, the nonliability of the contractor for injuries suffered by third parties for defects in the work done, was again recognized. The Court quotes from the Indiana case of Travis v. Rochester Bridge Co., 188 Ind. 79, 122 N.E. 1, as follows:

"As affecting the liability of a contractor, the acceptance of the work by the other party to the contract operates as the intervention of an independent human agency which breaks the chain of causation so as to preclude a third party from asserting or relying on any duty on the part of the contractor to use care for his safety in the construction of the work." (2 S.W.2d p. 527, top of 1st col.).

Jones v. Beck (Tex.Civ.App.1937), 109 S.W.2d 787, writ refused, was a case where a workman on a building being erected was injured by the alleged negligence of a prior contractor in excavating certain holes for use in erecting the building. A new party was engaged in erecting concrete forms in these holes for use in making concrete walls. Jones filed his suit against Beck and in addition to alleging the negligence facts surrounding the making of the excavations also alleged that Beck's work excavating the holes had been turned over to and had been accepted by the general contractor prior to plaintiff Jones' injury. A general demurrer was sustained to plaintiff's petition. The Court of Civil Appeals affirmed and said:

"Furthermore, the excavation having been accepted and the construction of the concrete forms having been commenced by another subcontractor, the liability of Beck for the negligent manner in which he had done his work, in the absence of hidden defects, would cease." (Citing numerous authorities. 109 S.W.2d 788(3)).

As said by the Court of Civil Appeals in the instant case:

"It is generally held that one is not required to foresee the negligent action of a third party or, to put it another way, that the chain of causation is effectively broken when the negligent action of another legal entity intervenes and thereby becomes an efficient producing cause of the injury." (Citing authorities). l. c. bot. 1st col. top 2nd col. p. 769 of 345 S.W.2d 769.

In Glade v. Dietert, 156 Tex. 382, 295 S.W.2d 642 (1956) an attempt was made to recover damages from an original contractor for destruction of plaintiff's premises. The contractor, Glade, entered upon plaintiff's premises under circumstances which made him a trespasser.

In reversing and rendering the two lower courts' judgments in favor of plaintiff against the trespassing contractor, this Court held:

"The decisions generally hold that under a contract with a municipality for the construction of public works the contractor is liable to third parties only for negligence in the performance of the work *and not for the result of the work performed according to the contract.* Daly v. Earl W. Baker & Co., Okl., 271 P.2d 1114; Tidewater Construction Corp. v. Manly, 194 Va. 836, 75 S.E.2d 500; Marin Municipal Water District v. Peninsula Paving Co., 34 Cal.App.2d 647, 94 P.2d 404; Yearsley v. W. A. Ross Const. Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554; Panhandle Construction Co. v. Shireman, Tex. Civ.App., 80 S.W.2d 461; Swilling v. Knight, Tex.Civ.App., 205 S.W.2d 421; Blair v. Waldo, Tex.Civ.App., 245 S.W. 986."

So, in the instant case, the majority holds Gehring liable for the results of his work, even though he had completed his contract in accordance with his contract.

See also Nedler v. Neece Lumber Co. (Tex.Civ.App.1933), 63 S.W.2d 403, no writ history; S. Blickman, Inc. v. Chilton (Tex. Civ.App.1938), 114 S.W.2d 646(1–3), no writ history; 30 Tex.Jur.2d p. 524, 535; 27 Am.Jur. p. 534–5, Sec. 55; Restatement of the Law, Torts, Vol. 2, p. 1026; 65 C.J.S. Negligence § 95b, p. 613.

In discussing the general subject of a contractor's liability for negligent performance of his contract, we find the following set out in 13 A.L.R.2d 207, Sec. 4 (1950):

"In relieving the contractor of liability to third persons injured as a result of his negligence in the construction, the courts have relied very heavily upon the line of reasoning that where the owner has knowledge of the defective construction of the structure and accepts the work and with such knowledge, permits third persons to come in contact therewith, the owner is himself thereby rendered guilty of negligence and such negligence on his part becomes the proximate cause of the third person's injury, and the original negligence of the contractor becomes the remote cause thereof relieving him of liability."

The same annotation sets out that among the reasons given for nonliability of the contractor after acceptance of his work, are the following: There would be no terminal date as to liability of contractor unless you set date of acceptance; no duty of care is owed by the contractor to a third party; and the intervention of an independent agency.

In that portion of the annotation which sets out the general rule of nonliability of the contractor for injuries to a third party found on pp. 201 et seq., cases are cited from Arkansas; California; Connecticut; District of Columbia; Georgia; Illinois; Indiana; Iowa; Kansas; Kentucky, Louisiana; Maryland; Massachusetts; Michigan; Minnesota; Missouri; Mississippi; Nebraska; New Jersey; New Mexico; New York; North Carolina; Ohio; Oklahoma; Oregon; Pennsylvania; Tennes-

see; Texas; Utah; Virginia; Washington; and Wisconsin—a total of 32 jurisdictions in which the general rule is recognized.

In 58 A.L.R.2d 865, (1958) there is a discussion of the "modern trend" not to follow the acceptance of work doctrine. It says that the better reasoning supports the rule of liability of the contractor as set forth in the McPherson case.

However, as sustaining this statement cases are cited only from Delaware; District of Columbia; Louisiana; New Hampshire; New York; Ohio; and Pennsylvania; for a total of only 7 jurisdictions. This annotation also recognizes that rule of nonliability is still the majority rule in the United States. In addition to the 32 states set out in 13 A.L.R.2d 201, this annotation in 58 A.L.R.2d 873 adds two additional states as supporting the general rule, viz., Arizona and Florida.

In discussing the application of the rule which holds manufacturers or processors of chattels as liable to third parties injured by defects in the manufactured article, the annotation in 13 A.L.R.2d p. 106, says, in part:

"While there is sufficient similarity in respect of liability to such third persons, between the situation of a manufacturer of articles and a building or construction contractor, to warrant the application to the latter of legal principles governing the liability of the former, there are also material factors or considerations applicable to one which are not applicable to the other, which in a particular instance may require the application of the rule of nonliability to a builder or construction contractor although under similar circumstances a rule of liability might have been applied to a manufacturer or processor. Thus, a manufacturer or processor of articles in manufacturing or processing the same does not ordinarily act as a contractor with the intermediate dealer, and the articles are

not usually prepared according to specifications prescribed by the intermediate dealer, whereas a building or construction contractor frequently undertakes to construct the thing contracted for with the contractee according to the latter's specifications. In such cases the contractee knows, or he is presumed to know, that the structure contracted for is likely to result in injury or damage to third persons, and the contractor may not ordinarily be expected to question the safety and soundness of his contractee's specifications or plans for the work. There is, therefore, found in the relation of the contractor and the contractee elements lacking in the relation of a manufacturer and intermediate dealer which would warrant the application of the doctrine of proximate cause in such a way as to connect the injury more closely to the negligence of the contractee in exposing third persons to the danger of faulty specifications and separate it from the contractor's original negligence in constructing the dangerous structure."

In addition, I would add that the manufacturer or processor of the food or chattel knows that his product is going to the ultimate consumer without change from the condition in which it leaves his plant; there is no contract right or duty on the intermedians handling his article or product to make any correction or deviation in or from its original condition—in fact such change is ordinarily impossible; he knows his product or article will reach the ultimate consumer within a comparatively short time; his product is not a part of a larger overall effort to accomplish a unified, integrated and completed product or object. A contractor, on the other hand, contributes, at most, a very few steps toward the finished product; other contractors must work on the product; the subsequent contractors are charged with a duty of taking the contract in the condition in which they receive it and molding it into a finished product safe and usable by all persons. To make prior contractors having no control over the project liable after their work is accepted is to make liability all continuing with no cut off point. This liability would have to be protected against in the price bid by each contractor, thereby raising the total contract price out of all proportion to its present value.

We find that the contract between Harris County and Gehring covers the moving and resetting of a 2000 foot four-strand barbed wire and cedar post fence along the Matthews farm and to "cut off the front 10 x 60 feet of the Matthews corral and add it onto the back * * * closing the front in along the new right-of-way." This was a part of an overall contract for the moving and resetting of some 41,688 feet of four-strand barbed wire fence and cedar posts in the fence. There is not one word which required Gehring to refill any post holes. The County was under the duty to secure the new right-of-way and to remove and reset the fencing and remove all structures along the new right-of-way. When this was done, the County was through with its obligations. Gehring was likewise through with his obligations. It was the State's responsibility to take over the right-of-way, and to finish the paved farm to market highway. The State let the contract to Austin Bridge Company for its part of the construction so as to secure the paved highway. Austin Bridge let the contract for preparing the right-of-way for surfacing and removing the obstructions to Hubbard. It was Hubbard's duty to blade the shoulders and the rest of the right-of-way not actually occupied by the roadway and to place the right-of-way in condition for the finished roadway. Austin Bridge retained for itself the paving of the actual roadbed.

The jury found that Gehring completed his part of the job June 18th or 19th, and that his work was accepted by Harris County as of that date. It also was shown that Gehring had finished his contract in full compliance with its terms. The jury found that the State and Hubbard had charge and control of the right-of-way on July 2nd,

when Strakos was injured. The jury further found that Hubbard and Harris County knew of the unfilled post holes at the time the County accepted the Gehring contract as fulfilled, and that Hubbard was guilty of negligence in not filling in the post holes prior to July 2nd.

There is no reason shown in the record that Gehring, as a reasonable man, should not rely on Austin Bridge and Hubbard doing what their contract required them to do. There were some 5,500 post holes unfilled along the old fence line. Had the County wanted Gehring to fill these, it could easily have put this requirement in its specifications.

Gehring complied with everything the County required him to do and with everything for which the County paid him. Under his contract, he owed no duty to anyone to fill in the post holes. Hubbard and Austin Bridge were getting paid to fill in the post holes and they owed a duty to do that very thing.

I would hold that Gehring's leaving the post holes open was not a proximate cause, but was a remote cause of Strakos' injury.

This holding is in accord with the existing law of Texas and some thirty other states. I would not change this rule of law. I think the law must have permanence if our economy is to be able to progress. Before a rule of law should be changed, the old rule must be reasonably unworkable and the proposed new rule should make for a clearer and more workable result, not lead to confusion and uncertainty as I believe is the result of the majority opinion herein.

CALVERT, C. J., joins in the dissent.

ON MOTION FOR REHEARING

NORVELL, Justice.

Our action in holding Gehring liable is in accord with the American Law Institute's Restatement of the Law of Torts [1] and what is described by the editors of the American Law Reports as the "Modern view of liability for foreseeable harm caused by negligence." [2]

By way of analogy, we may consider the case of a contractor who negligently affixed

---

1. One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others within or without the land for bodily harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor under the same rules as those stated in §§ 394 to 398, 403 and 404 as determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others. § 385, Restatement of the Law of Torts.

2. 58 A.L.R.2d 891. It is also stated by the A.L.R. editors that:

"As the modern view gains more and more support among the leading jurisdictions it seems safe to predict that the general rejection of the privity of contract rule as to building contractors is merely a matter of time.

"It is submitted that such a development is fully in accord with modern legal theory. Both reason and justice revolt against a further retention of the old rule with its potentially unfair re-

sults based on nothing but antiquated legal concepts and refuted hazy ideas of public policy. There can hardly be any doubt that *liability should issue from negligence in the face of a danger to others that may be reasonably foreseen.* This principle has been applied successfully in the case of personal property for the last forty years. It is equally applicable in the case of real property and will avoid in this field the confusion and uncertainty which is inherent in the application of the rule of nonliability with its numerous flexible and poorly defined exceptions. The adoption of the "modern view" does not burden the building contractor with an absolute liability. Under the rule, to find liability the plaintiff is still required to prove negligence on the part of the contractor and to show that a dangerous structure has been in fact erected and that the builder knew that it was to be used for human occupancy. It merely does away with an outmoded privilege based on an anachronistic legal concept and replaces it with the basic rule of negligence." (Italics supplied) 58 A.L.R.2d 872.

handrails to bathtubs in a home for aged persons. This defect is unnoticed by an inspector with the result that the building is accepted by the owner. Is there any reasonable basis for saying that the liability of the negligent contractor to one injured by the use of the defectively fastened handrail is automatically cut off by the owner's acceptance of the premises? Should negligent inspection excuse negligent construction, or should acceptance of a structure in a dangerous condition because of a hidden defect cut off a contractor's liability? At least, under such a factual situation and others similar thereto an exception to the "acceptance of the work" rule is called for. Such an exception relating to inherently dangerous defects is recognized in numerous jurisdictions. 58 A.L.R.2d 882. We need not, however, rely upon exceptions in this case as liability is fixed by the general rule of tort liability.

We see no difference in applicable principle between the hypothetical case given and the one actually before us. As pointed out in footnote 4 of the original opinion, the jury found from evidence sufficient in law that the hole left by Gehring was "inherently dangerous." In determining whether a condition is "inherently dangerous" under circumstances like those before us in this case, the question of foreseeability of resulting harm is clearly involved.

It is argued that under this contract, Gehring was not required to fill up the holes caused by his removal of the fence posts. The agreement is silent as to this matter and the contractual provisions thereof are not couched in directory wording of that certainty which would require a conclusion that the act of leaving the hole was at the time of its origin and thereafter the act of Harris County and not that of the contractor, as is sometimes the case where a builder merely follows plans and specifications which have been handed to him by the other contracting party with instructions that the same be literally followed. Liability of Gehring to Strakos is not based upon contract, but arises out of the circumstance that Gehring left a dangerous hole in the highway.

This case falls within the ambit of general tort liability. For the purposes of analysis only and for the time disregarding the methods employed in submitting elements of liability to the jury under our special issue system, we call attention to the recent article written by Professor Leon Green of the Law School of the University of Texas called "The Causal Relation Issue in Negligence Law," 60 Mich.Law Review 543. Professor Green points out that the orthodox analysis of a negligence case embodies the following elements:

> "(1) Did defendant's conduct contribute to the victim's injury (the causal relation issue)? (2) Was the victim protected under the law against the defendant's conduct with respect to the injury inflicted on him (the duty issue)? (3) Did defendant violate his duty under the law with respect to the victim's injury (the negligence issue)? (4) What is the evaluation in money of the losses suffered by the victim as a result of his injury (the damage issue)?"

The causal relation issue mentioned relates to cause in fact and not to the technical "proximate cause." The Court of Civil Appeals in its opinion points out that on July 2, 1956, Strakos approached a gate in the fence of the I. C. Matthews farm. On stepping out of his car, his leg went into a post hole left by Gehring when he moved the fence. Serious injury and disability resulted. This disposes of the causal relation issue. The cause and effect relationship between the leaving of the hole and the injury was clearly established.

The duty issue is to be resolved as a matter of law. 60 Mich.Law Review 562. Here there is no problem. Anyone working upon or using a highway is under a duty to refrain from creating conditions which are dangerous to other persons

using the same, or to warn of dangerous conditions should the same be created.

As to the negligence issue, it would perhaps be clearer to divide the same into two parts, i. e., the test of the reasonably prudent man and the test of the foreseeability of harm. This, because under the Texas special issue practice, the element of foreseeability is usually incorporated with the definition of proximate cause. Clearly as stated in the original opinion, a jury could find that a reasonably prudent person would not have left the hole in the road as Gehring did. The question as to foreseeability is similarly answered. Considering the position of the hole and the vegetation surrounding the same,[3] it would have taken little prophetic ken to have anticipated some injury similar to that which actually occurred.

There is no doubt that Strakos suffered serious bodily injuries and the Court of Civil Appeals has passed upon the contention that the amount of damages was excessive.

It accordingly appears that the facts of the case bring the same within the general rule of tort liability and we accordingly adhere to our holding that under the findings of the jury Gehring was liable to Strakos.

We need not extend this discussion further. What has been said on rehearing is somewhat repetitious of matter discussed in the original opinion. Further writing was, however, deemed advisable in the interest of clarity and the vigorous and able motions for rehearing filed herein.

We should perhaps also point out that in the Court of Civil Appeals numerous matters raised by Gehring were in substance the same as those raised by Hubbard. Likewise some points urged in the Court of Civil Appeals were much broader than the arguments made thereunder. However, all con-

tentions efficiently raised have been disposed of either by this Court's opinions or by the opinion of the Court of Civil Appeals.

The motions for rehearing filed herein are overruled.

---

3. The Court of Civil Appeals in describing the hole at the time of Strakos' injury stated that, "It was so obscured by grass as to be very difficult to discover." (345 S.W.2d 767)