**M. C. WINTERS, INC., et al., Appellants,**

**v.**

**Jim Bob EUBANK et al., Appellees.**

**No. 7968.**

Court of Civil Appeals of Texas, Texarkana.

March 17, 1970.

Rehearing Denied April 4, 1970.

Jack Pew, Ralph E. Hartman, Jackson, Walker, Winstead, Cantwell & Miller,

Wade C. Smith, Touchstone, Bernays & Johnston, Dallas, for appellants.

Henry Akin, Akin, Vial, Hamilton, Koch & Tubb, Dallas, Roland Boyd, Boyd, Veigel & Gay, McKinney, Ralph M. Hall, Rockwall, for appellees.

CHADICK, Chief Justice.

Mrs. Helen Eubank was fatally injured the morning of February 3, 1968, in a head-on collision between the automobile she drove and a tractor-trailer rig operated by Jimmy Travis Trail. The collision occurred as Trail's vehicle (8 feet wide, 50 feet in length) negotiated a detour on Interstate 30 near Rockwall, Texas, at a speed of approximately forty miles per hour.

The detour in the highway was required by a road construction contract the State of Texas, acting through the Highway Commission, made with Austin Bridge Company and M. C. Winters, Inc. Plans for highway facilities at the site of the collision were prepared by Forest and Cotton, Inc., consulting engineers. The plans called for the detour to begin with a 400 foot transition lane which would taper the two 12 foot wide east-bound lanes of the highway into one 12 foot wide lane, which would merge into and become the south lane and easterly traffic carrier of a two-way, east-west traffic artery. The 12 foot lane was to curve to the left at a 5 degree angle, then back to the right at another 5 degree angle, merging into the southmost of the two-way traffic lanes. The total length of the two 5 degree curves was designed to be approximately 450 feet, 225 feet for each curve.

The Forest and Cotton plans did not make use of a roadbed and drainage system which had been constructed for an earlier detour at or very near the site called for in the plans. Representatives of the contractors (M. C. Winters, Inc., and Austin Bridge Co., will be so referred to frequently hereafter) called this earlier

work and facilities to the attention of representatives of the State Highway Department, and after further conversations, negotiations and inspections, a detour at the designated point was laid out and built. As constructed, the transition lane rather than being 400 feet long was about 140 feet, and the curves in the detour, rather than being 450 feet overall, were slightly less than 200 feet in length, but the width of the detour lane at the point it joined the two-way traffic route was increased to 18 feet, instead of 12 feet as planned.

In response to special issue inquiry, the contractors were found negligent in seven separate respects, and each negligent act or omission was found to be the proximate cause of the collision. An appeal has been perfected. The appellants' brief lists fifty-nine points of error, but laudably the appellants have restricted their argument and direct their efforts to support of these two propositions, to-wit:

"I.

"Appellants are not liable to Appellees, because the detour was constructed by Appellants in accordance with the instructions, directions and requirements of the State of Texas.

"II.

"Appellants are not liable to Appellees, because there is neither evidence nor sufficient evidence to support any of the jury's liability findings against Appellants."

 There are two reasons why appellant's Proposition I is not valid in this case. First, contractors admit and the jury found that appellants' construction deviated from contract plans and specifications. Next, in performing the contract work the contractors were duty bound not to create a condition dangerous to road users. All parties appear to concede that the highway department's representative charged with administering the contract acquiesced in the changes and deviations from plans that occurred in actual construction of the detour. The deviations were advantageous to the contractors costwise and the alterations were made as the result of contractor initiated suggestions; the principle and most obvious benefit that could accrue to the State of Texas or to highway users from the deviations was the betterment flowing from an increase of 6 feet in width of the detour lane at the point it emptied into the east-bound traffic route, and a slight "flatting out" of the curve angle.

The contract between appellant and the State of Texas provided a form of procedure for changes and alterations therein; it required changes to be approved in writing by the Commission's engineer and endorsed on the plans or shown by supplement. The contract placed a limitation on the authority of the Highway Department's inspectors; they were specifically deprived of authority to relieve the contractor from the obligation to perform the work in accordance with the requirements of the specifications, or to "revoke, alter, enlarge, or release any requirement * * *", or "to approve or accept any portion of work", or "to issue instructions contrary to the plans and specifications". Non-compliance with the contract changes provision and recognization that the detour was not constructed in accordance with contract plans is tacitly acknowledged, but the contractors proceed in this appeal on the theory that they are "immune from liability to Appellees because, in every respect which the jury has bound us to be negligent, we were acting as we were required to act by the State of Texas." Their brief continues with the assertion that: "[I]t is a settled principle of Texas law that when a contractor builds a public improvement under contract with the State, and performs work thereunder in accordance with the requirements and directions of the representatives of the State, the contractor is not liable to persons who claim to be injured as a result of the work so performed. The reason is that

the act of performing the work in accordance with the contract is not the personal act of the contractor but is the act of the State of Texas." This approach by the appellants leads into a consideration of the second reason the contractors' Proposition I is deemed invalid.

To support the claim of immunity, the contractors cite McFadden v. Cecil Ruby Company, Inc., 422 S.W.2d 770 (Tex.Civ. App., Waco 1967, no writ); Glade v. Dietert, 156 Tex. 382, 295 S.W.2d 642 (Tex. 1956); Wood v. Foster & Creighton, 191 Tenn. 478, 235 S.W.2d 1 (1950); Russell v. General Construction Co., 59 S.W.2d 1109 (Tex.Civ.App. Eastland 1933, writ ref'd); City of Fort Worth v. Miller, 336 S.W.2d 296 (Tex.Civ.App. Fort Worth 1960, writ ref'd, n. r. e.); "Right of Contractor with Federal, State or Local Public Body to Latter's Immunity From Tort Liability", A.L.R.3d, 382, 385 (1966).

The cases cited, excepting from this comment McFadden v. Cecil Ruby Company, Inc., supra, are not decisive because they differ radically from the present case both in the nature of the basic facts and the cause of action plead or proven. In each instance the contractor performed in accordance with the terms of the contract and in the manner directed by representatives of a governmental agency and incidentally trespassed upon adjacent land of a third party, or created a condition that resulted in a trespass thereon. The rights of a person using an open public road and the tort liability of a contractor to the road user are not considered in these cases.

This extract from the excepted case, McFadden v. Cecil Ruby Company, Inc., supra, suggests the nature of the case and the defense interposed, to-wit:

"The record reflects that an asphalt curb was built across a portion of the Thornton Freeway to divert traffic while portions of the freeway were still in construction; that the curb was built by a subcontractor which had finished its work a year or so earlier; that on July 6, 1965, just prior to the opening of the Freeway for traffic, the Resident Engineer of the Highway Department requested defendant Ruby Company to remove the curb; that defendant did such to the satisfaction of the Highway Department and the removal complied with Highway Department requirements; that the highway was opened to the public on July 15, 1965".

Summary judgment for the defendant was based on the failure of the plaintiff to tender evidence of negligence proximately causing the plaintiff's injuries. The evidence, the court held, did not show the curb remnant left in the roadway by the Ruby Company participated in or contributed to cause the vehicular accident in question. The evidence was substantially this: "We were going along and all of a sudden we felt the damned car jerk and shake and it just jumped over sideways * * * we hit something; that is what it felt like. The car just jumped sideways and it was upon its top." As a secondary basis for affirmance the court appears to have relied upon the *completed work doctrine*, saying "It is undisputed that the defendant performed its work to completion to the satisfaction of the highway department. In such situation defendant can not be liable for the result of its work performed according to its contract." The opinion does not show the date the accident occurred, nor when it occurred in relation to the time the contractor performed the work of removing the curb. Strakos v. Gehring, 360 S.W.2d 787 (Tex.1962) is the latest expression of the Supreme Court on the *completed work doctrine and the liability of a highway construction contractor who undertakes to provide for the safety of road users during the performance of a road construction contract.* It is there said:

"It may be in some cases, that at the time of the completion of the work, certain events may be reasonably expected to occur which, coupled with the passage of time, would render injurious conse-

quences of leaving premises in an unsafe condition wholly unforeseeable. * * * It may also be true that in certain cases, factors or conditions may arise after the completion of the work, including the lapse of a substantial period of time, such as would compel a finding that independent causes had intervened to produce the injury."

The McFadden case, so far as the opinion reveals, may well have fitted the *lapse of time* category mentioned in Strakos, and does not necessarily bear upon the question now under consideration, that is, the immunity or not of a contractor from liability to a road user when performing contractual work on an open road in accordance with the directions of the Highway Department's representative.

■ In the context of this case, the several authorities cited do not support appellants' Proposition I. Here the contractors not only contractually agreed to "do such work as may be necessary to provide and maintain detours and facilities for safe travel in accordance with the plans and specifications", that is, provide a safe passageway for road users, but in addition owed a duty to road users to perform the contractual work as an ordinarily reasonable and prudent person would under the same or similar circumstances, that is, in a nonnegligent manner. John F. Buckner & Sons v. Allen, 289 S.W.2d 387 (Tex.Civ. App., Austin, 1956, No writ); Strakos v. Gehring, 360 S.W.2d 787 (Tex.1962); see also Buchanan v. Rose, 138 Tex. 390, 159 S.W.2d 109 (Tex.1942).

■ As previously noted, the jury found several separate acts or omissions of the contractors to be negligent and the proximate cause of injury. In substance, appellants' Proposition II challenges these findings as not being supported by any evidence or alternatively not supported by legally sufficient evidence, but argument under the proposition converges upon and makes causal relationship—cause in fact—the dominant issue. In evaluating the proposition, if it should develop that one set of these findings of primary negligence and proximate cause is supported by sufficient evidence appellants' Proposition II will be vitiated. By answer to special issues Nos. 41, 42 and 43, the jury found the contractors failed to construct the east-bound transition lane a total length of 400 feet, that such failure was negligence and the proximate cause of the collision. It is not feasible to state all evidence produced in connection with these liability issues. The summary here is for the purpose of examining and exhibiting any evidence tending to support the jury's finding. Calvert: "No Evidence" and "Insufficient Evidence", 38 Tex.Law Review, p. 361.

The Forest and Cotton plans called for a transition lane 12 feet wide and 400 feet in length for east-bound traffic as it approached the first curve in the detour. The contractors failed to follow the plan as to length and constructed a 140 foot transition lane instead. An expert traffic engineer testified that a driver approaching the detour curve at 40 miles per hour required 400 feet in which to react to the changeover confronting him in the detour and to make the preparation necessary to pass safely into and through the altered traffic pattern it portended; that a transition of less distance, such as the actual 140 foot length constructed, would not allow sufficient reaction time. A peace officer testified that collisions at the detour were frequent occurrences.

The truck driver testified that he misjudged the distance and struck the curb on his right as he negotiated the detour curve. His explanation for striking the curb was that in going through the double curve the trailer did not follow in the track of the tractor, and that it was necessary to swing to the right on the first curve and then steer back to the left as far as possible to follow the curve in the curved roadway. While acknowledging that he misjudged distance and struck the curbing to his right, he justified the mistake because it is difficult, "when you are sitting up on top

of something to see something right in under you", and rationalized that had he moved more to the left to miss the curb he would have moved into the lane of oncoming traffic. The driver also testified: "Well, I was just driving down the road and saw the construction signs showing the construction and all that, and as I started through the curb of the detour as I went through the last curve I felt something hit the curb, it felt like a tire hit it, and I glanced in my mirror and then when I looked back up, well, there was a car, the car was right in front of me, and we had a collision." Referring to the detour, he testified that for him as an experienced driver it contained sufficient space for his vehicle to pass through it at 40 miles an hour and stay on the proper side of the road.

Did failure to construct a 400 foot transition lane contribute to cause the collision? The function and purpose of the transition lane in this instance was to alert and familiarize a road user with a changing traffic system and prepare him for a variation in the traffic patterns and conditions in ample time for him to take the action necessary to proceed in safety. The summarized evidence clearly shows a cause and effect relationship. The truck driver approached the curve in the detour at an allowable 40 miles per hour, he misjudged the space open to his vehicle's use and struck a curb. Striking the curb diverted his attention from the road immediately in front of him. The collision occurred just as he looked forward again. Mistake in judging distance and therefore in steering and maneuvering his vehicle is a natural consequence of inadequate reaction time. Confusion of mind, or diversion of attention at a critical instant, caused the driver to (involuntarily perhaps) shift his attention from road conditions ahead of his vehicle. The collision followed so close on the shift of attention that time did not allow an effort to prevent it. These events flowed in a natural unbroken sequence from failure to construct the 400 foot transition lane required by the plans, and in reasonable probability contributed to cause the collision. In essence, the failure to construct a more length transition lane was a failure to warn adequately, and the flow of causative events are much the same as in a failure to warn situation.

The effort to demonstrate causal relationship has followed the lead of Strakos v. Gehring, supra, as it is understood, which appears to have been influenced by Professor Leon Green, especially, Green: "The Causal Relations Issue in Negligence Law, 60 Mich.Law Rev., p. 543 (19——). Foreseeability, whether considered as a part of the negligence issue or as a part of the proximate cause issue has support in the evidence. From the facts of the case, it appears that a person of ordinary prudence could have reasonably anticipated and foreseen that failure to construct a 400 foot transition lane would cause a vehicle collision or some similar result.

Having concluded that evidence is sufficient to support the jury finding that failure to construct a 400 foot transition lane had a causal relation to the injury inflicted, the appellants' Proposition II can not be sustained. By jury answers to another set of liability issues, Special Issues No. 44, 45 and 46, it was determined that the contractors "failed to construct the curves of the detour, to the left and to the right, for a total length of 450 feet", and that such failure was negligence and a proximate cause of the collision. Substantially the same line of reasoning folllowed in the discussion of Special Issues 41, 42 and 43 would result in a conclusion that sufficient evidence supported those jury findings. All matters presented for review, including motions, have been carefully examined, and the conclusion reached that reversible error is not shown. Accordingly, the judgment of the trial court is affirmed.