Thomas V. SEKULA, Appellant,

v.

CHAPARRAL ENERGY CORPORATION et al., Appellees.

No. 5818.

Court of Civil Appeals of Texas, Waco.

Aug. 17, 1978.

Rehearing Denied Sept. 7, 1978.

Ferriel C. Hamby, Jr., Adams, Graham, Jenkins, Graham & Hamby, Harlingen, for appellant.

Charles R. Porter, Jr., Porter, Taylor, Gonzalez, Thompson & Rogers, Corpus Christi, Charles C. Murray, Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, McAllen, for appellees.

## OPINION

JAMES, Justice.

This is a suit for damages brought by the owner and operator of the mineral estate against the surface owner, wherein the surface owner filed a cross-action for damages against the mineral owner as well as a third-party action against an independent contractor for indemnity and contribution.

Plaintiff-Appellee Chaparral Energy Corporation instituted this suit against Defendant-Appellant *Thomas v. Sekula* for damages to Chaparral's oilfield equipment that resulted from a root plowing operation and for conversion of a pipe-frame shed. Sekula counterclaimed against Chaparral, contending that his surface estate had been damaged as a result of Chaparral's negligence in conducting its oilfield operation. Sekula also filed a third-party action against Benedict Frank Kotzur, claiming he was entitled to indemnity and alternatively for contribution against Kotzur in the event Chaparral made any recovery against Sekula as a result of the root plowing operation. Chaparral never sued Kotzur.

Trial was to a jury which found (or failed to find as hereinafter indicated) as follows:

(1) Chaparral's equipment, pipes, wellheads, connections, and pumps situated upon the mineral leasehold estate were damaged as a result of the root plowing and brush cleaning operation performed by Kotzur and/or his employees.

(2) Pipe inquired about in Special Issue No. 1 was damaged to the extent that it could not be used for the purposes for which it was designed.

(3) The reasonable cost in Zapata County in February and March 1974 of labor and materials necessary to repair Chaparral's damaged oilfield equipment is $1306.00.

(4) The market value of Chaparral's damaged pipe in Zapata County in February and March 1974 (apparently before the root plowing) was zero.

(5) The market value of said pipe, immediately after it was damaged, was zero.

(6) Chaparral's production from the mineral lease was delayed in 1974 as a result of the damages to the mineral leasehold equipment;

(7) for a period of nine days.

(8) Defendant Sekula converted a building frame made of pipe welded together, which was situated upon Chaparral's mineral leasehold estate.

(9) Which building frame had a market value of $400.00 at the time of such conversion.

(10) Jury failed to find the entering and damaging inquired about in Special Issue No. 1 was wilful and intentional.

(11) Failed to find that such entering and damaging was in heedless and reckless disregard of the right of the owner of the mineral leasehold estate (Chaparral).

(12) No answer, and none required, because it was submitted conditionally upon an affirmative answer to Special Issue No. 10 or No. 11.

(12A) The damage to Chaparral's leasehold equipment might reasonably have been anticipated by Sekula as a probable consequence of the root plowing.

(12B) The instructions given by Sekula to Kotzur concerning the standard of care to be exercised by Kotzur as to Chaparral's mineral leasehold equipment was an adequate instruction to protect such equipment under the circumstances.

(12C) Jury failed to find that Sekula retained control over the details of Kotzur's work insofar as such work related to Chaparral's mineral leasehold estate.

(13) Chaparral failed to properly maintain and repair the pipeline and gathering system during the time in which Chaparral had been the operator of the mineral leasehold estate;

(14) which was negligence;

(15) and proximate cause of the damage to Sekula's surface estate.

(16) Chaparral failed to properly maintain the disposal system for the salt water produced from the oil wells;

(17) which was negligence

(18) and proximate cause of the damage to Sekula's surface estate.

(19) Chaparral failed to properly maintain and inspect the salt water tanks on the premises in question;

(20) which was negligence

(20A) and proximate cause of the damage to Sekula's surface estate.

(21) Such failure on the part of Chaparral as found by the jury in answer to Special Issues Nos. 13, 16 and 19 were in heedless and reckless disregard of Sekula's rights.

(22) $7500.00 would fairly and reasonably compensate Sekula for Sekula's damages as a result of Chaparral since October 1974.

(23) Sekula is entitled to $1.00 (one dollar) against Chaparral by way of exemplary damages.

After jury verdict the trial court determined that Plaintiff Chaparral should recover $8112.00 against Defendant Sekula, that Sekula should recover $7501.00 on his cross-action against Chaparral, and that Sekula take nothing on his third-party cross-action for indemnity or contribution against Kotzur. The trial court thus entered judgment that Chaparral recover the net amount of $611.00 against Sekula, from which judgment Sekula appeals.

Pursuant to a motion by Chaparral the trial court disregarded the jury's answers to Special Issues Numbers 3 and 7. As stated hereinabove, in answer to Special Issue Number 3, the jury found the reasonable cost to Chaparral to repair their damaged oilfield equipment to be $1306.00. The trial court's judgment recited there was no evidence to support this $1306.00 figure, whereupon the court substituted in place thereof $4674.00 to cover Chaparral's damage to the oilfield equipment.

By its answer to Special Issue No. 7 the jury found that Chaparral's production from the mineral lease was delayed nine (9) days as a result of the damages to the mineral leasehold equipment. The trial court disregarded the jury's answer to Special Issue No. 7 for the stated reason there was no evidence to support said finding, and substituted in place thereof eighteen (18) days of delay in production. The evidence was undisputed that the net cost of the oil to Chaparral at the time of such delay was $6.75 per barrel, and the mineral lease was producing 25 barrels per day. Based upon these figures, the trial court awarded Chaparral recovery against Sekula for delay in production the sum of $3038.00, same being 18 times 25 times $6.75. Then following the jury verdict, the trial court awarded Chaparral recovery of $400.00 against Sekula for conversion of the frame made of iron pipe. Adding the $4674.00 damage to the equipment, the $3038.00 delayed production, and the $400.00 frame together made up the total of $8112.00 recovery awarded to Chaparral against Sekula.

The $7501.00 recovery awarded to Sekula against Chaparral was in harmony with the jury verdict, composed of $7500.00 actual damages (Special Issue No. 22) and exemplary damages (Special Issue No. 23).

The trial court then subtracted the $7501.00 figure from the $8112.00 figure and awarded Chaparral a recovery against Sekula in the net amount of $611.00.

The trial court then pointed out in its judgment that since Sekula never requested any special issues pertaining to the liability of Kotzur as pleaded by Sekula in his third-party cross-action, and it "not appearing to the court that such facts have been proven as a matter of law by the undisputed evidence herein," recovery was denied Sekula as against Kotzur.

■ Sekula appeals upon eight points of error. By his fourth, fifth, sixth, and seventh points of error, Appellant Sekula complains of the trial court's disregarding and setting aside the jury's answers to Special Issues Nos. 3 and 7 of $1306.00 and nine days, respectively; and substituting in lieu thereof $4674.00 and eighteen days, respectively. We sustain these contentions.

In answer to Special Issue No. 3 the jury found that the cost of repair of the usable surface equipment, pipe, wellheads, roads, connections, and/or pumps damaged by the root plowing operations to be $1306.00. As stated before, the trial court disregarded this finding and awarded Chaparral recovery against Sekula the substituted amount of $4674.00 for such damage. In effect, the trial court found that the evidence conclusively established that the extent of damage to Chaparral's equipment amounted to $4674.00. In doing so the trial court erred. Without detailing the evidence, suffice it to say that there is considerable conflicting evidence bearing upon this special issue.

In answer to Special Issue No. 6, the jury found that Chaparral's production was delayed by the root plowing; and in response to Special Issue No. 7, such delay amounted to nine days. The trial court disregarded the jury's finding of nine days' delay, holding instead that the evidence conclusively established the delay to be eighteen days, entering thereupon a recovery therefor in favor of Chaparral against Sekula the sum of $3038.00. Here again the trial court erred in setting aside the jury's finding of nine days' delay in production and substituting in lieu thereof eighteen days. The evidence bearing upon this point is conflicting, involving opinions, estimates, and guesswork, and is far from conclusive.

Several witnesses, including experts, testified to matters bearing upon the delay in production, which evidence included conflicts which had to be resolved by the trier of facts, here the jury.

Sekula's eighth point asserts the trial court erred in not granting Sekula indemnity against Kotzur. Kotzur, who had been engaged in land contracting, agreed to root plow the land in question for Sekula at a price of $14.00 per acre. Sekula testified that prior to commencing operations, Sekula asked Kotzur if he could root plow the land in question without damaging Chaparral's oil producing pipes and equipment, and Kotzur replied that he could. However, Kotzur denied this, saying that he told Sekula he would "do his best" not to damage the Chaparral oil producing equipment. Pursuant to his agreement with Sekula, Kotzur entered upon the 420 acre tract where Chaparral's oilfield equipment was located, in order to root plow. Chaparral had upon the tract of land in question a secondary recovery operation, consisting of several production wells, salt water injection wells, tank batteries, pumps, and a network of pipes, some of which were below the surface but most of which were lying on top of the ground. Kotzur's root plowing equipment consisted of two 52,000 pound caterpillar tractors, each with a twelve foot root plow on the rear and a dozer blade on the front. Kotzur claimed he did no damage to the oilfield equipment except to run over a few pieces of loose pipe; however, Chaparral's witnesses testified to destruction of a considerable portion of the pipeline network as well as damage to some of the pumps, tanks, and wells.

■ Sekula brought a third-party action against Kotzur praying for indemnity, and alternatively for contribution, in the event Sekula was found to be liable to Chaparral in damages for the root plowing. Sekula never requested the submission of any special issues concerning this third-party action, and the trial court submitted none. As stated before, in its judgment the trial court denied any recovery for Sekula against Kotzur on the third-party action,

248

complaint of which is made by Sekula in his eighth point of error. We sustain this contention, and hold the trial court erred in denying Sekula indemnity in the event Sekula should become liable to Chaparral after retrial of this case on remand. Our holding is based upon the premise that under the undisputed facts Sekula is entitled to common law indemnity as a matter of law against Kotzur in the event Sekula ultimately becomes liable to Chaparral as a result of the root plowing operation.

As we see it, we analyze the undisputed evidence of this portion of the case as follows: (1) Chaparral's cause of action against Sekula is based upon *trespass*, for violation of Chaparral's property rights, and not upon negligence, as has been contended by some of the parties herein. See *Mountain States Telephone and Telegraph Co. v. Vowell Construction Co.* (1960) 161 Tex. 432, 341 S.W.2d 148. (2) Sekula as surface owner owed to Chaparral as owner of the mineral leasehold estate a nondelegable duty not to injure or destroy any of Chaparral's oilfield property upon the land in question. (3) Sekula did not himself do any damage to Chaparral's equipment, but did employ Kotzur as an independent contractor to do the root plowing. (4) Whatever damage was done to Chaparral's oilfield property was physically done by Kotzur, the independent contractor.

Under the above state of the record, Sekula is entitled to common law indemnity against Kotzur in the event Sekula ultimately becomes liable to Chaparral as a result of the root plowing under the well-settled rule announced by our Supreme Court in *City of San Antonio v. Smith* (1900) 94 Tex. 266, 59 S.W. 1109 at page 1111, and further discussed in *Strakos v. Gehring* (Tex.1962) 360 S.W.2d 787 at pp. 797 and 798. This rule is that a party (here, Sekula) who may be vicariously liable to the plaintiff for breach of a duty of protection, would be entitled to indemnity from his independent contractor (Kotzur) who is the active wrongdoer. This is closely akin to the rule that as between two joint tortfeasors, one of whom is passive and the other active, both of whom are liable to a

plaintiff, the passive wrongdoer is entitled to indemnity against the active wrongdoer. *Strakos v. Gehring*, supra. Also see *Coastal States Crude Gathering Co. v. Williams* (Corpus Christi CA 1971) 476 S.W.2d 339 at page 350, NRE; *Traylor v. Gray* (Corpus Christi CA 1977) 547 S.W.2d 644 at page 658, NRE; 41 Am.Jur.2d "Indemnity," par. 20, pp. 707 and 708. Appellant Sekula's eighth point of error is sustained.

Appellee Chaparral has filed cross points herein. We have carefully considered all of them, and overrule same as being without merit.

Having found error in the trial court's judgment as hereinabove discussed, we reverse and remand the entire case to the trial court for retrial on its merits in the interest of justice. Rule 434, Texas Rules of Civil Procedure; *Morrow v. Shotwell* (Tex.1972) 477 S.W.2d 538.

REVERSED AND REMANDED.