COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-354-CV
  
  
JOSH LARUE                                                                        APPELLANT
 
V.
  
CHIEF OIL & GAS, L.L.C., 
BIG D                                               APPELLEES
DOZER SERVICE INC., SMITH OIL
FIELD & ENVIRONMENTAL
SERVICES, INC., AND SPA
DRILLING, L.P.
   
------------
 
FROM THE 96TH DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        In 
six points Appellant challenges the trial court’s granting of summary judgment 
to all Appellees, and in a single cross point, Appellees assert that 
Appellant’s appeal is untimely and request this court to dismiss the 
appeal.  We will affirm.
II. Factual Background
        Chief 
Oil & Gas, L.L.C. (Chief) is a natural gas producer that, in November of 
2000, completed a well on the Chief Pent Mineral Lease (the Lease), adjacent to 
FM 718 in Tarrant County. SPA Drilling, L.P. (SPA) “drilled up mud” on the 
Lease.  After the well was completed SPA removed its equipment from the 
site around November 13 and 14, 2000, on flat bed trailers.  During the 
removal process the well site was very muddy, and Big D Dozer Service, Inc. (Big 
D) pulled equipment away from the drilling site and toward the highway.  An 
eight-foot wide gravel road existed from the entrance to the well. It is 
undisputed that mud[1] from the equipment move got on 
FM 718, and as a result, Chief instructed Smith Oil Field & Environmental 
Services, Inc. (Smith Oil) to clean the highway with a backhoe as the drilling 
equipment was removed. Smith Oil additionally removed two casings from the site 
at the same time, which also caused mud to be on the highway.
        On 
November 20, 2000, two days after the drilling equipment was removed, a 
technician for a utility company, Dan Estelle, was traveling south on FM 718 on 
the opposite side of the road from the Lease at about 55 m.p.h. Approximately 
eighty yards in front of Estelle’s vehicle, Josh LaRue (LaRue) was driving his 
pickup, also southbound and also traveling about 55 m.p.h. It was foggy and 
rainy, and the roads were slick because rain had washed over the road for 
several days. When LaRue’s pickup was about two hundred yards north of the 
Lease entrance, Estelle saw the rear end of LaRue’s pickup cross the 
highway’s center stripe; then the pickup slid off the road, crossed a bar 
ditch, became airborne, and struck a utility pole on the driver’s side before 
coming to rest on its side with the driver’s door facing upward. Estelle 
attempted to slow his heavy, large, six-wheeled “bucket truck,” but it slid 
sideways when he touched the brakes, and he had to “coax” his truck off the 
road into a bar ditch to come to a controlled stop. Estelle got out of his 
truck, approached LaRue’s pickup, and saw that LaRue was “in pretty bad 
shape.” He thought LaRue would die before he could be removed from his pickup. 
About fifty minutes later, paramedics arrived and were able to cut open the top 
of the pickup and transport LaRue to a hospital. It is not disputed that he was 
seriously injured.
        Estelle 
could not say that he saw mud in the southbound lane at the accident site, but 
he said he did see some small dirt clods on the northbound side of the road that 
were smashed onto the asphalt, each looking like “a black pancake.” Estelle 
had previously witnessed a backhoe and some people with shovels and brooms 
getting mud clods off the highway, and “they were spread out a great distance 
out here north of that entrance [to the Lease].” According to Estelle, the mud 
was on both sides of the road near the entrance to the Lease and continued “a 
pretty good distance out there because the trucks are so long and everything, 
they have to cross over, you know, to be able to get out of that entrance 
there.”
        It 
is LaRue’s contention that the mud on the highway caused the accident and that 
it was left there when the drilling rig and casing were removed from the Lease 
through the actions of Chief, SPA, and Big D. Further, LaRue alleges that Smith 
Oil failed to clean the road properly after the mud accumulated on the road. 
Smith Oil’s equipment operator, Raymond Martinez (Martinez), testified that he 
cleaned FM 718 as far as the mud was tracked immediately after each truck left 
the Lease and that he did not leave the work site each day until all the mud was 
removed. His supervisor, Scotty Duncan (Duncan), testified that after November 
14 and until the day of the accident, there was no activity on the Lease, but 
this testimony was disputed by Estelle who said he saw trucks larger than 
pick-ups leaving the Lease the day before the accident. The cleanup procedure 
was observed by David Oster (Oster), an inspector with the Texas Department of 
Transportation (TX Dot), who approved the job when the cleanup was complete. He 
testified that he traveled north from the Lease past the future accident site on 
November 16 and did not see any mud in the southbound lane and, in fact, that he 
would have turned around and had Martinez clean the road had he seen any mud. On 
the other hand, LaRue obtained affidavits from two witnesses, Brian Price and 
Jason Rogers, who arrived at the accident a short time after the wreck, and who 
stated that mud from the lease was present at the accident site on both sides of 
the road and was traceable to the Lease entrance. As a result of the accident, 
LaRue sued Chief, SPA, Big D, and Smith Oil under various negligence theories.
III. Procedural Background
        Appellees 
Chief, SPA, Big D, and Smith Oil all filed no-evidence motions for summary 
judgment. The trial court signed orders on July 21, 2003 granting summary 
judgment in favor of Big D, Chief Oil, and SPA, and on July 24 signed another 
order granting summary judgment in favor of Smith Oil. Finally, on October 28, 
the trial court entered a “final judgment.” It is from the summary judgments 
that LaRue appeals.
IV. Request to Dismiss the Appeal
        Appellees 
argue in their cross-point that this appeal should be dismissed because the 
notice of appeal was untimely filed on December 1, 2003, which would result in a 
lack of jurisdiction and dismissal. Davies v. Massey, 561 S.W.2d 799, 801 
(Tex. 1978) (orig. proceeding). They argue that after the final summary 
judgement was signed on July 21, 2003, the derivative claims for contribution 
and indemnity were extinguished by the granting of their motions for summary 
judgment, resulting in the commencement of the running of the appellate 
timetable from that July 21 date.
        However, 
our Texas Supreme Court does not agree. “An order that adjudicates only the 
plaintiff’s claims against the defendant does not adjudicate a counterclaim, 
cross-claim, or third party claim.” Lehmann v. Har-Con Corp., 39 S.W.3d 
191, 205 (Tex. 2001). Apparently, Appellees also believed that to be the case 
because they subsequently filed notices of non-suit of their cross-actions with 
the trial court in August 2003, which notices are now argued to be nullities. 
Based on the language in Lehmann cited above, we hold that there was not 
a final judgment until October 28, 2003, when the trial court signed a “final 
judgment,” disposing of the last non-suit and stating that “all claims in 
this case have been addressed and disposed of and the Court hereby signs a final 
judgment. This instrument is a final judgment as contemplated in Lehmann v. 
Har-Con Corp., 39 S.W.3d 191 (Tex. 2001), and is subject to appeal.” 
Therefore, the notice of appeal filed by LaRue on December 1, 2003 was timely 
(due to holiday courthouse closings). Tex. 
R. App. P. 26; Tex. R. Civ. P. 
4. This cross-point is overruled.
V. Adequate Time for Discovery
        LaRue 
asserts in his sixth point that the summary judgments should be reversed because 
there was an inadequate time allowed for discovery to address the no-evidence 
motions for summary judgment. Specifically, LaRue complains that he was unable 
to depose four witnesses who were at the scene of the accident, key fact 
witnesses who were employees of each of the Appellees, and a corporate 
representatives of each Appellee. He also complains that Appellees filed their 
motions only seven to eight months after the last Appellee filed its original 
answer.
        In 
determining whether there has been adequate time for discovery, certain factors 
warrant consideration: (1) the nature of the case, (2) the nature of the 
evidence needed to address the no-evidence motion, (3) how long the case has 
been on file, (4) how long the no-evidence motion has been on file, (5) whether 
the party filing the no-evidence motion has requested stricter deadlines for 
discovery, (6) the amount of discovery that has occurred, and (7) the nature of 
the discovery deadlines in place. Rest. Teams Int’l, Inc. v. MG Sec. Corp., 
95 S.W.3d 336, 339 (Tex. App.—Dallas 2002, no pet.). Chief filed its original 
answer on December 27, 2001 in response to LaRue’s original petition, Smith 
answered on April 25, 2002, and Big D answered on May 8, 2002, the latter two in 
response to LaRue’s first amended petition, and finally SPA answered on 
September 30, 2002 in response to LaRue’s second amended petition. Likewise, 
the no-evidence motions were filed by SPA on April 24, 2003, by Chief on May 19, 
2003, by Big D on May 22, 2003, and by Smith on May 28, 2003.
        It 
is instructive to turn to the summary judgment rule itself. The comment to Rule 
166a states, “A discovery period set by pretrial order should be adequate 
opportunity for discovery unless there is a showing to the contrary, and 
ordinarily a motion under paragraph (i) would be permitted after the period but 
not before.” Tex. R. Civ. P. 
166a cmt. Here, an agreed scheduling order was signed January 21, 2003 
and provided that dispositive motions should be filed by June 23, 2003, with 
June 30 being the deadline for the completion of all discovery, which was 
approximately one year and eight months following the original filing of the 
case on October 5, 2001. The discovery deadline had passed before the summary 
judgment motions were heard and ruled on.
        We 
review a trial court’s determination that there has been an adequate time for 
discovery on case-by-case basis under an abuse of discretion standard, Wolfe 
v. FairBanks Capital Corp., No. 2-03-100-CV, 2004 WL 221212 at *1 (Tex. 
App.—Fort Worth Feb. 5, 2004, no pet.) (not designated for publication), 
bearing in mind that a trial court abuses its discretion only when it acts in an 
unreasonable and arbitrary manner or when it acts without reference to any 
guiding rules or principles. E.I. du Pont de Nemours & Co. v. Robinson, 
923 S.W.2d 549, 558 (Tex. 1995). A court of appeals may not reverse a trial 
court’s ruling under this standard merely because it disagrees with the 
decision. Id. In this case, LaRue had propounded and received responses 
to written discovery; the depositions of LaRue, Sheriff Tramel, Oster, Estelle, 
Mr. Taylor of the EMS crew, Mr. Thompson, Chief Oil’s vice president, Mr. 
Martinez, Mr. Brown, and Mr. Duncan of Smith Oil, had been taken; LaRue had 
received a continuance on June 20, 2003 to obtain sworn statements; three 
witness affidavits had been obtained by LaRue; the case had been on file since 
October 2001; and the discovery period had ended per the agreed 
scheduling order—all prior to the hearing on the motions for summary judgment. 
Based on the forgoing, this court cannot say that the trial court abused its 
discretion by not agreeing that LaRue had inadequate time for discovery prior to 
the no-evidence motions for summary judgment being heard. LaRue’s sixth point 
is overruled. We now turn to the merits of the no-evidence motions and rulings 
thereon.
VI. Standard of Review
        After 
an adequate time for discovery, the party without the burden of proof may, 
without presenting evidence, move for summary judgment on the ground that there 
is no evidence to support an essential element of the nonmovant's claim or 
defense. Tex. R. Civ. P. 166a(i). 
The motion must specifically state the elements for which there is no evidence. Id.; 
Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002). 
The trial court must grant the motion unless the nonmovant produces summary 
judgment evidence that raises a genuine issue of material fact. See Tex. R. Civ. P. 166a(i) & cmt.; S.W. 
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).
        We 
review the evidence in the light most favorable to the party against whom the 
no-evidence summary judgment was rendered. Johnson, 73 S.W.3d at 197; Morgan 
v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000). If the nonmovant brings forward 
more than a scintilla of probative evidence that raises a genuine issue of 
material fact, then a no-evidence summary judgment is not proper. Moore v. K 
Mart Corp., 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). 
Because the trial court, in granting the no-evidence motion for summary 
judgment, did not articulate the grounds therefor, the judgment of the trial 
court will be upheld on any ground contained in the no-evidence motions for 
summary judgment.  Consequently, the nonmovant on appeal must negate all 
grounds on which the trial court could have relied in granting the summary 
judgment.  Harwell v. State Farm Auto. Mut. Ins. Co., 896 S.W.2d 
170, 173 (Tex. 1995).
  
A no-evidence point will be sustained when (a) there is complete absence of 
evidence of a vital fact, (b) the court is barred by rules of law or evidence 
from giving weight to [all the] evidence offered to prove a vital fact, (c) the 
evidence offered to prove a vital fact is no more than a mere scintilla, or (d) 
the evidence conclusively establishes the opposite of the vital fact.
  
Lampasas 
v. Spring Ctr., Inc., 988 S.W.2d 428, 432 (Tex. App.—Houston [14th Dist.] 
1999, no pet.).
VII. Was the Issue of Duty Before the Court?
        In 
his first point, LaRue asserts that because Appellees did not assert 
specifically in their no-evidence motions for summary judgment that they owed no 
duty to LaRue, summary judgment cannot be affirmed on that ground because this 
issue was not properly before the trial court and is therefore not before this 
court.  Cadenhead v. Hatcher, 13 S.W.3d 861, 863 (Tex. App.—Fort 
Worth 2000, no pet.); Shannon v. Law-Yone, 950 S.W.2d 429, 438 (Tex. 
App.—Fort Worth 1997, pet. denied).  Appellees respond that a portion of 
each of their motions stated that “after adequate time for discovery Plaintiff 
cannot provide any evidence to support the elements of his claims” and argue 
that this is adequate notice that Appellees were asserting, for summary judgment 
purposes, that each owed no duty to LaRue, as duty is an element of LaRue’s 
negligence claim. The comment to Rule 166a states that “[t]he motion must be specific 
in challenging the evidentiary support for an element of a claim or 
defense” and further notes that “general no-evidence challenges to an 
opponent’s case” are insufficient. Tex. 
R. Civ. P. 166a cmt. (emphasis supplied). Rule 166a(i) itself states that 
“[t]he motion must state the elements as to which there is no 
evidence.” Tex. R. Civ. P. 
166a(i) (emphasis supplied).
        The 
elements of a negligence cause of action are (1) legal duty owed by one party to 
another, (2) a breach of that duty, and (3) damages proximately caused by that 
breach. Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 
(Tex. 1990). The existence of a duty is a question of law for the court to 
decide based on the specific facts of the case. Mitchell v. 
Missouri-Kansas-Texas R.R. Co., 786 S.W.2d 659, 662 (Tex.), cert. denied, 
498 U.S. 896 (1990). The question presented to this court is whether stating 
that there is no evidence to support the elements of the plaintiff’s claims is 
of sufficient specificity to support an assertion that there is no evidence of a 
duty owed by the defendant/movant to the plaintiff under the negligence claim. 
Examining Appellees’s motions for summary judgment, each asserts in its 
respective paragraph III, entitled “No Evidence Exists That The Defendant Did 
Or Failed To Do Anything Which Proximately Caused Plaintiff Damages,” that
  
After adequate time for discovery, Plaintiff cannot provide any evidence to 
support the elements of his claims. Defendant, Chief Oil & Gas [and 
respectively in their motions, Smith Oil, Big D, and SPA] is fully entitled to 
summary judgment as a matter of law because under Plaintiff’s negligence cause 
of action, there is no evidence of the following elements:
 
1.That 
Movant tracked mud and/or oil onto FM 718;
 
2.That 
Movant created a hazardous condition;
 
3.That 
Movant was responsible for the transportation of the oil rig;
 
4.That 
the mud and/or oil proximately caused Plaintiff’s injuries; and
 
5.That 
Movant was responsible for the cleaning of FM 718.
 
Based 
on the foregoing, and recalling that “[t]he specificity requirement is 
designed to avoid conclusory no-evidence challenges to an opponent’s cause of 
action,” In re Mohawk Rubber Co., 982 S.W.2d 494, 498 (Tex. 
App.—Texarkana 1998, orig. proceeding), we find no specific allegation that 
there was no evidence of a duty owed by Appellees to LaRue.
   
The summary judgment pleading rules . . . are consistent with the express 
language of Rule 166a(c) requiring that the motion for summary judgment state 
the specific grounds therefor and further the purpose of 166a(c) to provide 
adequate information for opposing the motion, and to define the issues.  
Carving exceptions to this simple requirement that the motion for summary 
judgment state the specific grounds frustrates the purposes of Rule 166a(c).
  
McConnell 
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993). There was 
not a proper no-evidence motion for summary judgment asserting the absence of 
evidence of the existence of a duty before the trial court, and therefore the 
basis for granting summary judgment could not have been the non-existence of a 
duty owed by Appellees to LaRue.
        Appellees 
assert that LaRue’s complaint about lack of specificity is waived through the 
failure to timely specially except to the trial court, citing McConnell v. 
Southside Independent School District, 858 S.W.2d at 342-43 and Dyegard 
Land Partnership v. Hoover, 39 S.W.3d 300, 307 n.4 (Tex. App.—Fort Worth 
2001, no pet.). We conclude this argument is unpersuasive. These cases involve 
grounds for traditional motions for summary judgment that are unclear or 
ambiguous. As pointed out by the McConnell court, “[E]ven in this 
situation, however, an appellate court cannot read between the lines, infer or 
glean from the pleadings or the proof any grounds for granting the summary 
judgment other than those grounds expressly set forth before the trial 
court [in the motion for summary judgment].”  McConnell, 858 
S.W.2d at 343 (emphasis supplied).  Further, “[t]he practical effect of 
failure to except is that the non-movant loses his right to have the grounds for 
summary judgment narrowly focused, thereby running the risk of having an 
appellate court determine the grounds it believes were expressly presented 
in the summary judgment.”  Id. (emphasis supplied).  Such is 
certainly not the case here.  The assertion of no duty has not been 
“expressly set forth” or “expressly presented,” and the motion is not 
“unclear or ambiguous.”  We conclude that there has been no waiver of 
the right to complain about specificity.
        Appellees 
next assert that the issue of duty may be raised not only in the motion, but 
also in replies to responses to the motion, citing Stiles v. Resolution Trust 
Corp., 867 S.W.2d 24, 26 (Tex. 1993).  We would first observe that Stiles 
is a traditional motion for summary judgment case and that rule 166a(c) states 
that “[i]ssues not expressly presented to the trial court by written motion, 
answer, or other response shall not be considered on appeal as grounds 
for reversal.”  Tex. R. Civ. P. 
166a(c) (emphasis supplied).  The Stiles Court held that this 
restricts the “trial court’s ruling to issues raised in the motion, 
response, and any subsequent replies,” and that “[t]hough the rule does not 
expressly preclude an appellate court from affirming a summary judgment on 
grounds not raised in the trial court, we believe that the reasons for the rule 
in the trial court apply equally in the appellate court.”  Stiles, 
867 S.W.2d at 26.  The question, therefore, is whether a movant for a 
no-evidence motion for summary judgment may for the first time assert a 
no-evidence point in a reply to the non-movant’s response.  Our Texas 
Supreme Court has addressed this specific language in Rule 166a(c), holding that
  
[t]he word written modifies not only the word motion, but also the words answer 
and other response.  The issues required by the rule to be expressly 
presented are those pointed out to the trial court in written motions, written 
answers, or written responses to the motion.  The term answer in the 
context of the rule refers to the answer to the motion, not an answer generally 
filed in response to a petition.
  
City 
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 673 (Tex. 1979) 
(emphasis supplied).  Therefore, the phrase “or other response” means 
responses to the summary judgment motion, as therefore must “replies” 
referred to in Stiles.  Stiles, 867 S.W.2d at 26.  This 
reasoning should apply equally to no-evidence motions for summary 
judgment.  We hold that the proper procedure to raise a new no-evidence 
point is to file an amended or supplemental no-evidence motion for summary 
judgment specifically setting forth the new element or elements of the non-movant’s 
cause of action or affirmative defense for which it is claimed no evidence has 
been presented, and that a new element asserted as a basis for a no-evidence 
motion may not first be presented in a reply to a response to a no-evidence 
motion for summary judgment.
        Therefore, 
we agree with LaRue that the basis for granting Appellees’ no-evidence motion 
for summary judgment could not properly have been the absence of a duty by 
Appellees to LaRue because that issue was not before the trial court, that this 
issue was not waived by LaRue, and that a reply to a response to a no-evidence 
motion for summary judgment may not contain a new no-evidence issue. LaRue’s 
first point is sustained.
VIII. Duty
        LaRue 
asserts in his second point that the trial court erred if it granted the 
Appellees’ no-evidence motions for summary judgment on the basis that they 
owed no duty to LaRue.  We do not reach this point because by sustaining 
LaRue’s first point, we conclude that the question of any duty owed by 
Appellees to LaRue was not properly before the trial court and could not 
therefore have been the basis for the granting of the no-evidence motions for 
summary judgment.
IX. Breach of Duty
        We 
next turn to LaRue’s third point, in which he contends that he presented more 
than a scintilla of evidence that the various duties allegedly owed him by 
Appellees were breached.  LaRue first asserts that Chief breached a duty to 
exercise reasonable care in its control over Smith Oil’s cleaning of the 
highway, citing Redinger v. Living, Inc., 689 S.W.2d 415, 418 (Tex. 
1985).  There was some evidence presented that mud existed on the highway 
at the accident scene that was traceable to the Lease, as set forth in the 
affidavit testimony of witnesses Price and Rogers.  Based on the Lampasas 
factors previously discussed, we may uphold the granting of the no-evidence 
motion for summaryjudgment if “the evidence offered to prove a vital fact is 
no more than a mere scintilla.” Lampasas, 988 S.W.2d at 432.
  
Less than a scintilla of evidence exists when the evidence offered to prove a 
vital fact is so weak that it does no more than create a mere surmise or 
suspicion of its existence and, in legal effect, is no evidence.  More than 
a scintilla of evidence exists when the evidence rises to a level that would 
enable reasonable and fair minded people to differ in their conclusions as to 
the existence of the vital fact.
 
Lias 
v. State Farm Mut. Auto. Ins. Agency, 45 S.W.3d 330, 333 (Tex. App.—Dallas 
2001, no pet.) (citing Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 
1983)). Under these circumstances, we cannot say that the testimony of two 
witnesses who were at the accident scene shortly after its occurrence amounts to 
no more than a “surmise or suspicion” that Chief failed to exercise 
reasonable care over Smith Oil’s work.  The absence of evidence of a 
breach of this alleged duty could not have be a proper ground for the grant of 
summary judgment.
        LaRue 
next asserts that he presented sufficient evidence that Chief breached both its 
duty as the controller of the Lease premises not to jeopardize or endanger the 
safety of persons traveling on the adjacent highway, as articulated in Alamo 
National Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981), and its duty to 
prevent activities and conditions that present a dangerous condition to those 
outside the property, again citing Kraus, 616 S.W.2d at 910, and relying 
in part on section 414a of the Restatement (Second) of Torts, R2d Torts § 414a (2003).  Again, 
without deciding whether such duties existed, the same evidentiary testimony in 
the Price and Rogers affidavits, along with the undisputed Chief/Smith Oil 
relationship is sufficient to meet LaRue’s burden of the breach of the alleged 
duties when faced with a no-evidence motion for summary judgment.  LaRue 
further argues that Chief breached a duty to him to guard against peculiar risks 
of harm arising from independent contractor activities, as set forth in Scott 
Fetzer Co. v. Read, 945 S.W.2d 854, 860-61 (Tex. App.—Austin 1997), aff’d, 
990 S.W.2d 732 (Tex. 1998), based on section 416aof the Restatement (Second) of 
Torts; see R2d Torts. We 
agree that the same evidence is more than a scintilla of evidence of the breach 
of this alleged duty and is sufficient to defeat the no-evidence motions.
        Finally, 
LaRue alleges that each appellee breached a duty to avoid creating hazardous 
conditions on the highway, citing section 600.001(a) of the Texas Transportation 
Code: “[A] person who drops or permits to be dropped or thrown on a highway 
destructive or injurious material shall immediately remove the material or cause 
it to be removed.”  Texas Transp. 
Code Ann. § 600.001(a) (Vernon 1999).  This is somewhat similar to 
case law regarding the breach of a duty to refrain from using a highway in a 
manner that creates conditions that are dangerous to others who use the highway 
or to warn of dangerous conditions if they are created. See Strakos v. 
Gehring, 360 S.W.2d 787, 803-04 (Tex. 1962) (unfilled post holes adjacent to 
a highway); Jalco, Inc. v. Rodriguez, 578 S.W.2d 452, 453 (Tex. Civ. 
App.—Waco 1979, no writ) (missing man hole cover); Kirby Lumber Corp. v. 
Walters, 277 S.W.2d 796, 799 (Tex. Civ. App.—Beaumont 1955, no writ) (mud 
on highway).  There are no cases that have construed the terms 
“destructive or injurious material” in this code section.  We are 
mindful that our Texas Supreme Court has recently determined that “holding a 
land owner accountable for naturally accumulating mud that remains in its 
natural state would be a heavy burden because rain is beyond the control of 
landowners,” and has held that “[t]he ordinary mud found on the concrete 
slab outside of the M.O. Dental Lab [that] accumulated due to rain and remained 
in its natural state . . . was not a condition that posed an unreasonable risk 
of harm to Rape necessary to sustain her premise liability action.” M.O. 
Dental Lab v. Rape, 139 S.W.3d 671, 676 (Tex. 2004).  The mud here, 
according to Price and Rogers, was not “naturally accumulating” and did not 
accumulate “due to rain” but originated 200 feet away from the accident site 
at the Lease entrance.  While mud deposited on a highway may not be 
analogous to a missing man hole cover or open fence post holes, these facts are 
close to those in Kirby Lumber, and we do find that under these 
circumstances the affidavit testimony previously discussed is more than a 
scintilla of evidence that there existed “destructive or injurious material” 
from the Lease on the highway that Smith Oil had been directed by Chief to 
remove.  Hence, there is sufficient evidence of a breach of this alleged 
duty to avoid summary judgment in favor of Chief.
        While 
there is disputed testimony as to the proximity to the highway to which Big D 
moved the well drilling equipment, there is no evidence that Big D’s equipment 
deposited any mud on the highway directly. LaRue points to testimony from 
Estelle, who stated that “one particular morning when I was headed back home, 
they were actually using a bulldozer to pull the truck to the gate 
entrance.”  This, however, cannot be said to be evidence that Big D 
dropped, or permitted to be dropped or thrown, “destructive or injurious 
materials” on the highway and is no evidence of a breach of duty owed by Big D 
to LaRue.  On the other hand, Smith Oil allowed mud to reach the highway 
from the casings it removed, and there is more than a scintilla of evidence of 
Smith Oil’s breach of this statutory provision.  Likewise, SPA removed 
the drilling equipment, and its trucks also left mud on the highway.  
Consequently, there is sufficient evidence of a breach of this alleged duty to 
avoid summary judgment. We sustain LaRue’s third point as to Chief, SPA, and 
Smith Oil and overrule this point as to Big D.
X. Proximate Cause
        In 
LaRue’s fourth point, he asserts that there was sufficient evidence of 
proximate causation to meet Appellees’ no-evidence motions for summary 
judgment.  Proximate cause has two elements, cause-in-fact and 
foreseeability.  Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 
1992). The test for cause-in-fact is whether the act or omission was a 
substantial factor in causing the injuries without which the harm would not have 
occurred.  Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 784 
(Tex. 2001).  Likewise, forseeability means that an actor as a person of 
ordinary intelligence should have anticipated the dangers that his negligent act 
created for others.  Id. at 785.  The Price and Rogers 
affidavits represent some evidence that there was mud on the highway at the 
location of LaRue’s accident, but Price and Rogers were not witnesses to the 
accident.  The only identified witnesses to the accident were LaRue and 
Estelle. Estelle stated that he could not say that there was mud on the 
southbound lane of the roadway where LaRue was traveling and said that he did 
not know what caused LaRue to slide off the road.  There is no testimony in 
the record before us from LaRue.  There is no direct evidence of causation 
or circumstantial evidence, such as testimony regarding skidmarks in mud in the 
southbound lane. LaRue basically argues that because there was some evidence 
from the affidavit testimony that there was mud on both sides of the road (Price 
affidavit) and mud on FM 718 (Rogers and Gibson affidavits) that this is 
tantamount to some evidence of cause-in-fact, that is, that mud caused the 
accident.  We conclude that it amounts to no more than surmise and 
suspicion.  The trial court therefore could have correctly based the 
summary judgment on the ground that there was no evidence of proximate 
cause.  Accordingly, we overrule LaRue’s fourth point.
XI. Gross Negligence
        In 
his fifth point, LaRue argues that he sustained his burden to produce sufficient 
evidence of gross negligence on the part of Appellees to avoid summary 
judgment.  Gross negligence contains two elements: (1) from the actor’s 
standpoint, the act or omission complained of must involve an extreme degree of 
risk, considering the probability and magnitude of the potential harm to others 
and (2) the actor must have actual subjective awareness of the risk involved but 
nevertheless proceed in conscious indifference of the rights and safety or 
welfare of others.  Harrison, 70 S.W.3d at 785.  Circumstantial 
evidence may be sufficient to prove both elements, and some evidence of care by 
movants does not necessarily defeat a showing of gross negligence.  Id. 
Extreme risk means the likelihood of serious injury to the complaining party, 
and actual awareness means that the actor knew about the peril but the acts or 
omissions complained of demonstrated that the defendant did not care.  Id.
        Further, 
in order to obtain an award of damages based on the finding of gross negligence, 
LaRue must demonstrate by clear and convincing evidence that the harm he 
suffered resulted from malice.  Malice is defined as “a specific intent 
by [Appellees] to cause substantial injury to Josh LaRue,” see Pattern Jury Charges, State Bar of Tex., Texas 
Pattern Jury Charges PJC 4.2b (2003), or an act or omission by Appellees 
that constitutes gross negligence as previously defined.
        It 
is undisputed that Chief hired Smith Oil to use a backhoe to clean dirt from the 
highway.  The effectiveness of this operation is disputed.  However, 
there is no evidence that Chief or Smith Oil was indifferent to whether the job 
was done properly to the peril of LaRue or had specific intent to harm LaRue.  
Further, there is no evidence that Big D or SPA was in any way involved in 
insuring that the cleanup took place properly or that they were indifferent to 
the safety of LaRue, or intended to harm him.  In short, there is no 
evidence of gross negligence in this case, and LaRue’s fifth point is 
overruled.
XII. Conclusion
        Having 
overruled LaRue’s fourth and fifth points with respect to all Appellees and 
LaRue’s third point with respect to Big D, the granting of summary judgment by 
the trial court as to all Appellees is affirmed.
 
 
                                                                  BOB 
MCCOY
                                                                  JUSTICE
 
 
  
PANEL B:   LIVINGSTON, 
GARDNER, and MCCOY, JJ.
 
DELIVERED: March 31, 2005


NOTES
1.  
LaRue continually refers to mud and oil on the highway in his briefs.  
However, the evidence of oil on the road consists of one line of testimony from 
Duncan, a supervisor with Smith Oil, who said in response to the question 
“Where was that mud coming from?” that it was coming from “the oil casing 
itself,” and from the affidavit of Brian Price who stated, “I personally 
noticed mud and oil on FM 718, spread for a great distance and on both sides of 
the road . . . I could also see the origin of the mud, which was the Chief Pent 
Lease.”  Because of the paucity of evidence concerning the existence and 
origin of the oil and its causal relationship to the accident, this opinion will 
only address the existence of mud on the highway.